**BOARD OF COMMISSIONERS OF the COUNTY OF HARRISON, Indiana, and Harrison County, Indiana, Appellants–Defendants,**

v.

**Gary LOWE, Brenda Lowe and Kimberly J. Lowe, Appellees–Plaintiffs,**

and

**Kimberlynn R. Stewart, Appellee–Defendant.**

No. 22A01–0101–CV–31.

Court of Appeals of Indiana.

Aug. 2, 2001.

James S. Stephenson, Stephenson Daly Morow & Kurnik, Indianapolis, IN, Attorney for Appellant Board of Commissioners of Harrison County, Indiana.

Edwin S. Sedwick, Jeffersonville, IN, Attorney for Appellees Gary Lowe, Brenda Lowe and Kimberly J. Lowe.

## OPINION

BROOK, Judge.

### Case Summary

Appellants-defendants Board of Commissioners of the County of Harrison, Indiana ("the Board"), and Harrison County, Indiana (collectively, "the County"), bring this interlocutory appeal from the trial court's partial denial of the County's motion for summary judgment. We affirm in part, reverse in part, and remand.

### Issue

The County raises a single issue, which we restate as whether the trial court erred in partially denying its motion for summary judgment.

### Facts and Procedural History [1]

On March 17, 1997, appellee-plaintiff Kimberly Lowe ("Kimberly"), traveling westbound on Shiloh Road in Harrison County, approached the intersection of Old State Road 135, a north-south thoroughfare with a 55–mile–per–hour speed limit. Two signs required eastbound and west-

---

1. We heard oral argument in this cause on July 16, 2001, in Indianapolis. We thank the parties for their preparation and presentations.

2. Stewart filed a separate motion for summary judgment and a motion for separate

bound Shiloh Road traffic to stop at this intersection, but there were no stop or yield ·signs posted on Old State Road 135. Kimberly stopped her vehicle as required, proceeded into the intersection, and was struck by a northbound vehicle driven by Kimberlynn Stewart ("Stewart").

Kimberly and her parents, appellees-plaintiffs Gary Lowe and Brenda Lowe (collectively, "the Lowes"), filed suit against Stewart[2] and the County. The Lowes alleged that the County negligently failed "to properly plan, design, maintain, repair, mark, and sign the intersection of Shiloh Road and Old State Road 135 and to take reasonable precautions to prevent dangerous conditions to exist" at this intersection. As an affirmative defense, the County asserted that it was "immune from civil liability pursuant to [Indiana Code Section] 34–13–3–3."

The County filed a summary judgment motion in which it contended, *inter alia*, that it was immune from civil liability under Indiana Code Section 34–13–3–3(7) for failing to adopt an ordinance requiring a four-way stop at or "changing the right-of-way pattern of the intersection" and for failing to adopt an ordinance reducing "the regulatory speed limit at, or near, the subject intersection." The Lowes responded that section 34–13–3–3(7) was "totally inapplicable to the case at bar."

On December 12, 2000, the trial court granted partial summary judgment in favor of the County, having determined that the County "ha[d] immunity in the design of the two County roads" and had no legal duty to "remove weeds or other vegetation

---

trials. The trial court denied both motions. Stewart subsequently petitioned for interlocutory appeal; we accepted jurisdiction and subsequently dismissed the appeal on May 7, 2001, on the Lowes' motion.

to enhance the visibility of the cross-traffic at the subject intersection." The trial court denied the County's motion in all other respects. This interlocutory appeal ensued.

### Discussion and Decision

■ Under our well-settled standard of review of a denial of a summary judgment motion under Indiana Trial Rule 56(C) we apply the same legal standard as the trial court. *See Indiana Dep't of Fin. Inst. v. Worthington Bancshares, Inc.,* 728 N.E.2d 899, 901–02 (Ind.Ct.App.2000), *trans. denied.*

Summary judgment shall be granted if the designated evidence shows that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Once the moving party has sustained its initial burden of showing the absence of a genuine issue and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts showing a genuine issue for trial. We will resolve any doubt as to fact or inference to be drawn from the evidence in favor of the party opposing the motion. Where, as here, the material facts are essentially undisputed, our sole task is to determine whether the trial court properly applied the law to the facts.

*Id.* at 902 (citations omitted).

■ As previously mentioned, the County asserted in its summary judgment motion that it was immune from civil liability under section 34–13–3–3(7) of the Indiana Tort Claims Act ("the Act").[3] The Act

allows suit against government entities for torts committed by their agencies or employees, but grants immunity under the specific circumstances enumerated

in [Indiana Code Section] 34–13–3–3. Whether a governmental entity is immune from liability under the Act is a question of law for the courts. The essential inquiry is whether the legislature intended acts such as those challenged to enjoy immunity. Because the Act is in derogation of the common law, it is narrowly construed against the grant of immunity.

*Gibson v. Evansville Vanderburgh Bldg. Comm'n,* 725 N.E.2d 949, 952–53 (Ind.Ct. App.2000) (citation omitted), *trans. denied.* As the party seeking immunity, the County bears the burden of proving that its conduct falls within the Act and is thus shielded from immunity. *See id.* "Immunity assumes negligence but denies liability. The purpose of immunity is to ensure that public employees are able to perform their duties without threat of civil litigation." *Worthington Bancshares,* 728 N.E.2d at 902. If immunity exists, the County simply is not liable; the degree of its culpability and the nature of its tortious conduct are not relevant considerations. *State Dep't of Natural Res. v. Taylor,* 419 N.E.2d 819, 823 (Ind.Ct.App.1981), *trans. denied.*

The paragraph of section 34–13–3–3 relevant to our discussion reads as follows:

A governmental entity is not liable if a loss results from:

. . .

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or imprisonment[.]

Indiana Code Section 34–6–2–49 defines "governmental entity" for purposes of the Act as "the state or a political subdivision of the state." Both the County and the

---

**3.** *See* IND.CODE §§ 34–13–1–1 to –25.

Board are classified as "political subdivisions" under Indiana Code Section 34–6–2–110(1) and (10). The Board is the County's legislative body, IND.CODE § 36–1–2–9(1), and exercises the powers of the County by adopting ordinances. *Id.* § 36–1–3–6(b)(1) and (c)(1). The adoption of such ordinances must comply with the procedures outlined in Indiana Code Chapter 36–2–4. *Id.* § 36–2–4–2.

As a "local authority" under section 9–13–2–94(b), the Board "may adopt by ordinance additional traffic regulations with respect to streets and highways under [its] jurisdiction," provided that such ordinance does not "conflict with or duplicate a statute." *Id.* § 9–21–1–2(a); *see also id.* § 8–17–1–40 ("A county legislative body may adopt ordinances regulating traffic on any highway in the county highway system, subject to IC 9–21."). By ordinance, the Board may "[d]esignate an intersection as a stop intersection and require all vehicles to stop at one (1) or more entrances to the intersection," as well as "[a]lter the prima facie speed limits" authorized under chapter 9–21–5. *Id.* § 9–21–1–3(a)(7) and (11).[4] Such ordinances are effective when the signs giving notice of the traffic regulations are posted. *Id.* § 9–21–1–3(b).

■ The County argues that it is immune from liability under section 34–13–3–3(7) for its failure to adopt ordinances to reduce the speed limit and erect a stop sign for northbound traffic on Old State Road 135. The Lowes contend that the County's legislative immunity claim must fail for the following reasons: (1) the County had a duty to "keep its streets and county roadways in a reasonably safe condition for motorists" and thus was a "sub-

ject of the law," rather than a sovereign entitled to immunity under the Act; (2) the County failed to make a policy decision either to act or not to act with respect to speed limits and stop signs, and thus the question of immunity must be addressed under section 34–13–3–3(6) and *Peavler v. Bd. of Comm'rs of Monroe County,* 528 N.E.2d 40 (Ind.1988); (3) section 34–13–3–3(7) "is only applicable as to those breaches of duty to the public at large, dealing primarily with law enforcement, and has no application in the instant case which deals with breach of a private duty"; and (4) the County allegedly had actual knowledge that the intersection in question was dangerous and failed to exercise its authority to comply with its duty. To address the Lowes' arguments and to dispel the confusion that has blurred the distinction between paragraphs (6) and (7) of 34–13–3–3, we undertake a brief historical review of their application.

In *Harvey v. Bd. of Comm'rs of Wabash County,* 416 N.E.2d 1296 (Ind.Ct.App. 1981), the plaintiff's husband was killed by a motorist who failed to yield the right-of-way at an intersection. The plaintiff alleged that the yield sign erected at the intersection by Wabash County "did not conform to the standards of the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways (the Manual)." *Id.* at 1298. Wabash County claimed immunity under paragraph (7) "because the failure to replace the sign in conformance with the Manual constituted 'the adoption and enforcement of or failure to adopt or enforce a law' as defined by the statute."[5] *Id.* at 1299. The *Harvey* court stated,

---

4. *Cf. id.* § 9–21–5–6(d) (prohibiting local authority from altering "a speed limit on a highway or extension of a highway in the state highway system"). Before the date of Kimberly's accident, Old State Road 135 was des-

ignated as part of the County's highway system.

5. Indiana Code Section 34–13–3–3 was formerly codified as section 34–4–16.5–3; we

The Immunity Statute, by its plain language, protects governmental entities from suit based on their failure to promulgate or enforce laws. Discretionary acts are immunized; ministerial acts are not. If a county or city is acting not as a sovereign which has failed to compel a subject to obey the law or as a sovereign which has not promulgated a law but rather as a subject of the law issued by a higher sovereign (the State), the Immunity Statute does not apply.

In this case the trial court's rationale was that the county's non-conformity with the manual was akin to a determination not to adopt an ordinance. I.C. 9–4–2–1 [6] *et seq.*, however, require that the manual *shall* be adhered to by all governmental agencies installing road signs:

Manual; scope

Sec. 1. The Indiana Manual on Uniform Traffic Control Devices for Streets and Highways *shall* be adhered to by all governmental agencies within the state responsible for the signing, marking and erection of all traffic control devices on all streets and highways within the state ...

Manual; statewide application

Sec. 2. All streets and highways within the State *shall* be signed and marked in conformity with the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways by January 1, 1971. (The Sign Statute)

I.C. 9–4–2–1; –2 (emphasis added).

Thus the Immunity Statute is inapplicable here because adherence to the

Manual has been specifically *required* of all counties in Indiana by the legislature. The plain words of the Sign Statute establish the guidelines that counties must follow. The State, acting through the legislature, requires counties to follow the Sign Statute. Wabash County is subject to, and not a discretionary enforcer of, the provisions of the Manual. Simply put, the question is "Did Wabash County break the law?" *Not* "Did Wabash County make the law?"

The trial court construed the Sign Statute and the Immunity Statute as dealing with identical subject matter and therefore in conflict. We do not so regard them. Because by its terms the Sign Statute establishes a ministerial duty, while the Immunity Statute by its terms relieves a governmental entity from liability for failure to do certain discretionary acts, the two statutes address different situations. They are not in conflict.

*Id.* at 1299–1300 (ellipsis in original).

Indiana Code Section 9–21–4–3(b) reads in relevant part, "A local authority *shall* place and maintain traffic control devices upon highways under the authority's jurisdiction, not including state highways, the authority considers necessary to indicate and to carry out this article or local traffic ordinances or to regulate, warn, or guide traffic." (Emphasis added.) The Lowes rely on this statute, as well as *Harvey*, in asserting that the County is "subject to the law" and is not a sovereign with respect to its "obligation to keep its streets and county roadways in a reasonably safe condition for motorists" and thus is not

refer to the statute by its current citation for purposes of clarity.

**6.** The relevant portions of this statute are now codified as Indiana Code Section 9–21–4–1 ("A governmental agency in Indiana that is

responsible for the signing, marking, and erection of traffic control devices on streets and highways within Indiana shall follow the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways.").

immune from liability under section 34–13–3–3(7). We observe, however, that section 9–21–4–3(b) grants a local authority discretion to place such traffic control devices as it "considers necessary" and that while the *Harvey* court determined that *maintaining* (or failing to maintain) an existing traffic control device in conformance with the Manual is a ministerial act not subject to immunity, this court subsequently determined that *erecting* (or failing to erect) a traffic control device is both a discretionary and a legislative act and is therefore entitled to immunity under section 34–13–3–3(6) and (7).

In *City of Tell City v. Noble*, 489 N.E.2d 958, 959 (Ind.Ct.App.1986), *trans. denied*, a motorcyclist was injured in a collision at an unmarked intersection. Tell City moved to dismiss Noble's claim for "'negligently and carelessly failing to provide adequate signs, markings, and traffic controls àt the intersection[']" under paragraph (6) of the statute, which confers immunity upon a governmental entity if a loss results from "the performance of a discretionary function"; the trial court denied the motion. The trial court also instructed the jury, over Tell City's objection, that Tell City "had a duty to exercise reasonable care in constructing, designing and maintaining its streets, which included the duty to erect STOP signs or warning signs at intersections where they were warranted," and that Tell City would be liable for a breach of this duty. *Id.*

Noble presented evidence that a STOP sign should have been placed at the northwest corner of the intersection. There was also evidence that a comprehensive ordinance existed which delineated intersections in Tell City which should have been marked. However, the intersection [in question] was not included therein.

*Id.*

A panel of this court sought to determine as a matter of first impression whether Tell City was immune from liability under paragraphs (6) *and* (7) of section 34–13–3–3. The *Tell City* court noted that local authorities are authorized by statute to regulate traffic on streets and highways under their jurisdiction and that placement of stop signs at intersections is a matter of discretion. *See id.* at 961–62 (noting that relevant statutes granting traffic control powers, including posting of stop signs, to local authorities contain the word "may," which "ordinarily indicates a permissive condition and discretion"; "Should the legislature have intended to make the placing of STOP signs mandatory, it would have used the word 'shall.' Of course it would have been impractical for the legislature to do so, since the signing of streets and highways clearly requires judgment and discretion."). The court further observed that although our supreme court in *Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972),[7] had "abolished governmental immunity, it did not pretend to abolish all immunity. Governmental entities remain immune from liability for, among other things, judicial acts, *legislative* acts, and discretionary acts," including those acts enumerated in paragraphs (6) and (7). *Tell City*, 489 N.E.2d at 962 (emphasis added). "If the duties imposed are of a *legislative* or judicial nature, *or* depend on judgment, the public entity is not responsible in damages either for *failing* to perform or error in performance." *Id.* (citing

7. *See Benton v. City of Oakland City*, 721 N.E.2d 224, 227 (Ind.1999) (noting that *Campbell* was the last "in a series of decisions beginning in the middle of this century" abrogating almost all "older common law principles immuniz[ing] governmental units from tort liability").

*Brinkmeyer v. City of Evansville,* 29 Ind. 187 (1867)) [8] (emphases added).

The court then considered the distinction between discretionary and ministerial acts and reached the following conclusion:

> After analyzing the above material, we find that the alleged negligent act in the instant case was Tell City's failure to erect traffic control devices at the intersection in question. We are not dealing with an assertion of faulty maintenance, or an assertion that the physical aspect of the signs did not meet the manual's specifications. Nor are we dealing with an assertion that the alleged negligent act was committed by a workman, by a maintenance crew foreman, or even by the director of the street department. We are dealing with an act of the governing body itself. Under [Indiana Code] 9–4, as discussed above, the decision to erect traffic control devices is to be made by ordinance of the city council and therefore the decision is legislative, as well as penal in nature. Neither the statutes nor the Manual create any mandatory duty in that regard, rather the how, what and where of traffic control device placement is addressed to the discretion of the city council. Such an act by a city council is both legislative and discretionary. Non-action is likewise legislative and discretionary.

> Therefore, under the plain meaning of [Indiana Code Section 34–13–3–3(6) and (7) ], Tell City is immune from liability for its decision not to erect a traffic control device at the intersection in question. If [Indiana Code Section 34–13–3–3(6) and (7) ] are not applicable here, we are at a loss as to where they would be applicable. A contrary decision would emasculate the tort claim immunity statute.

> ... It is clear from the Act that the legislature delegated to the legislative bodies of local authorities the duty of marking streets and highways within their jurisdictions, and therefore, by necessity, has clothed them with great discretion.

*Id.* at 964. Thus, to borrow the *Harvey* court's terminology, the County would be considered a "sovereign" and not a "subject of the law" with respect to the decision to erect traffic control devices.

In *City of Indianapolis v. Constant,* 498 N.E.2d 1308 (Ind.Ct.App.1986), *trans. denied* (1988), the city had decided not to install a protected left turn arrow signal at the intersection where the plaintiff was injured and sought immunity for this decision as a discretionary function. The *Constant* court concluded that there was

> no distinction between the failure to erect a STOP sign, the subject of the dispute in *Tell City,* and the failure to install a left turn arrow signal. Both control the flow of traffic; both are penal in nature if violated.

> The decision to install a left turn arrow signal for northbound traffic at the [intersection in question] was a discretionary act, as was the decision not to

---

**8.** *See Brinkmeyer,* 29 Ind. at 191:

> A municipal corporation is, for the purposes of its creation, a government possessing to a limited extent sovereign powers, which, in their nature, are either *legislative* or judicial, and may be denominated governmental or public. The extent to which it may be proper to exercise such powers, as well as the mode of their exercise, by the corporation, within the limits prescribed by the law creating them, are, of necessity, entrusted to the judgment, discretion and will of the properly constituted authorities, to whom they are delegated. And being public and sovereign in their nature, the corporation is not liable to be sued, either for a *failure* to exercise them, or for errors committed in their exercise.

> (Emphases added.)

install an identical signal for southbound traffic. Therefore, the City is immune from liability pursuant to [Indiana Code Section 34–13–3–3(6) *and* (7)].

*Id.* at 1311 (emphasis added).

In *Peavler,* our supreme court resolved two cases wherein discretionary immunity—not legislative immunity—was at issue regarding a county's failure to place warning signs to advise motorists of a sharp curve and a "T" intersection, respectively.[9] According to the *Peavler* court, "[e]ach of the cases at bar turn[ed] on the meaning of discretionary function" in section 34–13–3–3(*6*). 528 N.E.2d at 42. The *Peavler* court abandoned the ministerial/discretionary test[10] in favor of the planning/operational test in determining whether a governmental act is discretionary and therefore immune from liability:

> Under the planning/operational dichotomy, the type of discretion which may be immunized from tort liability is generally that attributable to the essence of governing. Planning activities include acts or omissions in the exercise of a legislative, judicial, executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy.

*Id.* at 45 (citation omitted). In determining whether Monroe and Steuben counties were entitled to discretionary immunity, the *Peavler* court stated,

> The defendants here seek to establish the defense of immunity. Each bears the burden to show that a policy decision, consciously balancing risks and benefits, took place. Neither defendant county presented evidence to show that its decision regarding the warning signs was the result of such a process.

*Id.* at 47–48. The *Peavler* court distinguished the cases before it from *Tell City,*

> where there was evidence that a comprehensive ordinance existed which delineated intersections which should be marked. The intersection in question was not included in the ordinance. From this, we conclude that [Tell] City considered the intersection in question in adopting the comprehensive ordinance and determined that the intersection should not be marked. The wisdom of this decision therefore cannot be reviewed by the courts.

*Id.* at 48 n. 2.

Our court revisited the applicability of section 34–13–3–3(7) with respect to traffic control devices in *Cromer v. City of Indianapolis,* 540 N.E.2d 663 (Ind.Ct.App.1989). The *Cromer* court determined that the city's decision to post a 40–mile–per–hour speed limit on the thoroughfare in question "fell under the umbrella of governmental immunity created by the Tort Claims Act."[11] *Id.* at 665. In *Holiday Rambler Corp. v. Gessinger,* 541 N.E.2d 559 (Ind. Ct.App.1989), *trans. denied,* the plaintiff

---

9. *See Peavler v. Bd. of Comm'rs of Monroe County,* 492 N.E.2d 1086 (Ind.Ct.App.1986); *Bd. of Comm'rs of Steuben County v. Hout,* 497 N.E.2d 597 (Ind.Ct.App.1986).

10. *See Peavler,* 528 N.E.2d at 45 ("The ministerial/discretionary test does not advance the public policy of government immunity because it does not consider the type of decision protected by immunity. Rather, it considers only the resulting conduct and attempts to label that conduct.").

11. With respect to the city's failure to erect warning signs, however, the *Cromer* court relied on *Peavler* in concluding that because the city had failed to show that it had "consciously balanced risks and benefits to arrive at a decision not to place warning signs along [the road]," it was not entitled to summary judgment on the question of discretionary function immunity. 540 N.E.2d at 666.

argued that the State was not entitled to discretionary function immunity under paragraph (6) for failing to reduce a speed limit because it had not established that this failure "was the result of a policy oriented decision making process." *Id.* at 563.

The State argues that the establishment of a speed limit is the adoption of a rule or regulation by the State which is immune. Likewise, the State claims, the failure to reduce the speed limit constitutes the failure to adopt a rule or regulation which is also immune. The Indiana General Assembly has established the maximum lawful speed limit on highways as fifty-five (55) miles per hour except when a special hazard exists. We regard the State's action as adopting a rule or regulation within the plain meaning of the statute....

The speed limit is alterable by the State Highway Commission pursuant to IC 9–4–1–61 [12] whenever it is determined on the basis of an engineering and traffic investigation that the maximum speed is greater than is reasonable or safe under the conditions found to exist at any place in the state highway system. Gessinger argues that the ability to alter the speed limit is a discretionary decision of the State Highway Commission pursuant to *Peavler.* However, a distinction exists between the decision

by the Highway Commission to change a legislatively enacted speed limit, as in the present case, and a county's decision to place a warning sign, as in *Peavler.*

To determine whether or not a part of the highway is extra hazardous necessitating a reduction in the speed limit pursuant to IC 9–4–1–61, an inspection of the highway would have to be performed. This function of the State Highway Commission would also be immune pursuant to [section 34–13–3–3(11) ] which states:

> (11) failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety;

Because of these reasons the State is immune from liability for failing to reduce the posted maximum speed limit.

*Id.* at 563–64 (citation omitted).[13]

In *Joseph v. LaPorte County,* 651 N.E.2d 1180 (Ind.Ct.App.1995), *trans. denied* (1996), the speed limit for a certain stretch of road was incorrectly posted as forty-five miles per hour instead of thirty-five miles per hour.[14] The court determined that LaPorte County "made a policy decision to set the speed limit [for the entire road] at forty-five m.p.h. after con-

---

**12.** Now IND.CODE § 9–21–5–12.

**13.** In *Holiday Rambler,* the State acknowledged that there was no evidence to establish that it had "ever engaged in a policy oriented decision making process with respect to the placement of warning signs," but because there was "no evidence in the record that the State failed to exercise adequate traffic engineering in the placement of highway warning signs or that the absence of warning signs contributed to cause the collision, summary judgment on that count was proper." 541 N.E.2d at 564.

**14.** The LaPorte county board adopted an ordinance setting the speed limit for the road at forty-five miles per hour. *Joseph,* 651 N.E.2d at 1182. The board established a thirty-five-mile-per-hour speed limit for a stretch of the road near the intersection at issue but failed to post a sign to this effect for westbound traffic. *See id.* at 1185 and n. 5. However, the *Joseph* court classified the county board's failure to post the correct speed limit as "operational oversight," rather than discretionary activity, and reversed the trial court's grant of summary judgment on this issue. *Id.* at 1185.

sciously weighing risks and benefits" and therefore enjoyed discretionary immunity from liability on this issue. *Id.* at 1184–85. In a footnote, the court stated that "LaPorte's decision to set the speed limit at forty-five m.p.h. is shielded by immunity from suit under the [Act] as a legislative function [under paragraph (7); citation to *Cromer* omitted]. We address discretionary immunity only because LaPorte failed to present the legislative immunity argument to the trial court in their motion for summary judgment." *Id.* at 1183 n. 3.

With the possible exceptions of *Cromer* and *Joseph,* the application of governmental legislative immunity under paragraph (7) has—rightly or wrongly—consistently been intertwined with the application of discretionary function immunity under paragraph (6). Absent any "policy oriented decision-making process" undertaken by the County regarding stop signs or speed limits in this case, it is perhaps understandable that the Lowes would argue that paragraph (6), rather than paragraph (7), should apply and thereby deprive the County of statutory immunity. However, when viewed as a separate and distinct source of statutory immunity, paragraph (7) unambiguously [15] shelters the County from civil liability for its failure to adopt traffic control ordinances.

At common law, municipalities were immune from liability for losses resulting from their failure to perform a governmental function. *See, e.g., Wheeler v. City of Plymouth,* 116 Ind. 158, 158, 18 N.E. 532, 532–33 (1888) ("A municipal corporation is not liable for a negligent failure to enforce an ordinance, nor is it liable for omitting to enact ordinances."); *Brinkmeyer,* 29 Ind. at 191; *Mayne v. Curtis,* 73 Ind.App. 640, 645, 126 N.E. 699, 701 (1920) ("It is uniformly held that a city is not liable for a failure to exercise powers of a purely governmental character. It is not liable for failure to ... enact proper ordinances, nor for failure properly to enforce the laws of the state or ordinances of the city enacted for the protection of the lives and property of the citizens. Such powers are governmental and discretionary, and failure to exercise them cannot be made the basis of an action for damages."), *trans. denied; Louisville & S. Indiana Traction Co. v. Jennings,* 73 Ind.App. 69, 73–74, 123 N.E. 835, 837 (1919) ("It is the settled law of this state ... that a municipal corporation ... is a government, possessing to a limited extent sovereign powers, which are either legislative or judicial, and which may be denominated governmental or public, and, such powers being public and sovereign in their nature, such city is not liable for a failure to exercise them, or for errors committed in their exercise."), *trans. denied; City of Indianapolis v. Williams,* 58 Ind.App. 447, 452, 108 N.E. 387, 389 (1915) ("Nor is a city liable for injuries that flow from a failure on the part of the city to perform a governmental function, nor for its discretionary acts.").[16]

---

**15.** In their appellate brief, the Lowes claim that our supreme court found paragraph (7) to be ambiguous in *Quakenbush v. Lackey,* 622 N.E.2d 1284 (Ind.1993), when in fact the court limited its finding of ambiguity to the paragraph's "enforcement of a law" provision. *See id.* at 1287–89.

**16.** *See Peavler,* 528 N.E.2d at 41–42:

At common law, courts drew distinctions based on the dual character of the municipal corporation as both a government and a corporation. A municipal corporation acted as a government when it[ ] exercised traditional governmental functions. Those acts performed by the municipality which were analogous to acts exercised by a private corporation were proprietary functions. A municipality was immune when exercising its governmental functions but was not immune when acting in its proprietary capacity.

In abolishing most forms of common law sovereign immunity in *Campbell*, our supreme court nevertheless ·exempted certain governmental acts or omissions:

> We do not mean to say by this opinion that all governmental units can be held liable for any and all acts or omissions which might cause damage to persons. For example, one may not claim a recovery because a city of state failed to provide adequate police protection to prevent crime. Nor may one recover damages because a state official made an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the state official for making such an appointment. Likewise the United States Supreme Court has recognized a judicial immunity. On this subject matter Professor Prosser, in his treatise, stated the following:
>
>> At the very outset it was more or less obvious that some vestige of the governmental immunity must be retained. It was, for example unthinkable that either [a] state (or) a municipality should be held liable for a wrong decision of its courts, for an erroneous evaluation of property by a tax assessor. In several of the decisions abrogating the immunities, there was language used which reserved the possibilities that there might still be immunity as to *'legislative'* or 'judicial' functions, *or* as to acts or omissions of government employees which were *'discretionary.'* Prosser, Law of Torts § 131, at 986 (4th ed. 1971.)
>
> Therefore, it appears that in order for one to have standing to recover in a suit against the state there must have been a breach of duty owed to a private individual.

259 Ind. at 62–63, 284 N.E.2d at 737 (emphases added) (some citations omitted).

 In *Benton v. City of Oakland City*, 721 N.E.2d 224 (Ind.1999), our supreme court abolished the public/private duty distinction advocated by the Lowes [17] and stated, "In general, it is only after a determination is made that a governmental defendant is not immune under the [Act] that a court undertakes the analysis of whether a common law duty exists under the circumstances." *Id.* at 232. By enacting section 34–13–3–3(7), the General Assembly codified the common law doctrine of legislative immunity which is, as we have said, separate and distinct from discretionary function immunity under paragraph (6).[18] A plain reading of paragraph (7) clearly demonstrates that a governmental entity is not liable if a loss results from its failure to adopt a law: whether the entity ever engaged in any "policy oriented

---

(Citation omitted.) Our supreme court abandoned the governmental/propriety distinction in *Campbell*. *See id.* at 42. "The [*Campbell*] Court noted that while certain common law immunities, such as those for judicial and legislative decisions must remain, other instances giving rise to state liability should be considered by the legislature." *Id.*

17. The *Benton* court explained, "The 'duty owed to a private individual' to which *Campbell* refers is the common law duty to use ordinary and reasonable care under the circumstances." 721 N.E.2d at 228. The court further noted that subsequent decisions had bifurcated this rule "into concepts of 'private duty' and 'public duty.' This resulted in highly abstract, almost metaphysical debates over whether the duty alleged to have been breached was a 'private' one or a 'public' one." *Id.* at 230.

18. Thus, we reject the Lowes' contention regarding the applicability of *Bd. of Comm'rs of Adams County v. Price*, 587 N.E.2d 1326 (Ind. Ct.App.1992), *trans. denied*, where we addressed the question of discretionary function immunity under section 34–13–3–3(6) with respect to Adams County's failure to post a warning sign to mark an intersection.

decision-making process" is irrelevant in this context and must be considered only in cases of discretionary function immunity. *See McCormick v. State Dep't of Natural Res.*, 673 N.E.2d 829, 833 (Ind.Ct. App.1996) ("Absent express declaration or unmistakable implication, statutes will not be interpreted as changing the common law."). Thus, the County is immune for its failure to adopt ordinances to erect or change the placement of stop signs or to reduce the speed limit at the intersection in question.

■ Since the County is entitled to immunity on this issue, any actual knowledge it might have had regarding the dangerous condition of the intersection[19] is inconsequential:

> Immunity assumes negligence but denies liability. Thus, the issues of duty, breach and causation are not before the court in deciding whether the government entity is immune. If the court finds the government is not immune, the case may yet be decided on the basis of failure of any element of negligence. This should not be confused with the threshold determination of immunity.

*Peavler*, 528 N.E.2d at 46–47. Thus, we need not determine whether the County's knowledge of the allegedly dangerous condition of the intersection imposed upon it a duty to remedy the condition by adopting traffic control ordinances.

■ As a final consideration, the County asserts that because it is immune from liability for its failure to adopt ordinances regarding stop signs and speed limits under section 34–13–3–3(7), it should be entitled to summary judgment with respect to

its failure to erect warning signs. The County concedes that it is not entitled to legislative immunity for such a failure because it need not adopt an ordinance to install a warning sign; nevertheless, the County argues, because the Lowes failed to designate this as an issue of material fact, the County should be granted summary judgment thereon.

We disagree. "Because the party seeking summary judgment has the burden of demonstrating that no question of fact exists as to any material issue and that it is entitled to judgment as a matter of law, the non-movant is not required to come forth with contrary evidence unless and until the movant has met this burden." *Cavinder Elevators, Inc. v. Hall,* 726 N.E.2d 285, 290 (Ind.2000). At the hearing on its motion, the County specifically acknowledged that it had not moved for summary judgment on this issue: "We're not saying that the County is immune for placing or for not placing warning signs. We have not moved for immunity on that issue." Since the County failed to meet its burden to demonstrate the absence of a question of fact regarding warning signs, the Lowes were not required to designate this issue or any relevant evidence in response to the County's motion. *See* Ind. Trial Rule 56(C).

In summary, we hold that the County is entitled to legislative immunity under section 34–13–3–3(7) for its failure to adopt traffic control ordinances. We therefore reverse the trial court's denial of summary judgment as to this issue, affirm its judgment in all other respects, and remand for further proceedings.

---

**19.** In support of their motion opposing summary judgment, the Lowes designated a study of six Harrison County intersections conducted by Aecon Engineers & Consultants and dated September 1, 1995. Aecon representative Ron May reported on this study at a Board meeting four days later. The study recommended that "Shiloh Road be assigned right of way as the through road and [that] Old State Road 135 be controlled with stop signs."

Affirmed in part, reversed in part, and remanded.

ROBB, J., and VAIDIK, J., concur.