

**FILED**

May 20 2016, 9:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Patrick A. Elward
Meaghan Klem Haller
Jessica Whelan
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

James S. Stephenson
Stephenson Morow & Semler
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nikki Jones, as Personal Representative of the Estate of Phillip Matthew Jones, <br><br> *Appellant-Plaintiff*, <br><br> v. <br><br> Hancock County Board of Commissioners, <br><br> *Appellee-Defendant*. | May 20, 2016 <br><br> Court of Appeals Case No. 30A01-1506-CT-543 <br><br> Appeal from the Hancock Circuit Court <br><br> The Honorable Richard D. Culver, Judge <br><br> Trial Court Cause No. 30C01-140l-CT-87 |

**Brown, Judge.**

[1] Nikki Jones as Personal Representative of the Estate of Phillip Matthew Jones (the "Estate") appeals from the order of the trial court entering summary judgment in favor of the Hancock County Board of Commissioners (the "Board" or the "County"). The Estate raises one issue which we revise and restate as whether the court erred in entering summary judgment in favor of the Board. We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] On July 5, 2012, Phillip Matthew Jones ("Jones") was driving in a truck northward on County Road 400 West ("CR 400W"). Jacqueline Thomas was driving in a blue car westward on County Road 200 North ("CR 200N"). At the intersection of CR 400W and CR 200N, drivers on CR 400W were not required to stop and drivers on CR 200N were required to stop at posted stop signs. The stop sign for westbound traffic on CR 200N at the intersection of CR 400W had a "sign underneath that said cross traffic does not stop." Appellant's Appendix at 178. Thomas was seventeen years old and had obtained her driver's license two days earlier on July 3, 2012, and she knew that traffic on CR 400W did not have a stop sign.

[3] Thomas stopped on CR 200N at the stop sign at the intersection of CR 200N and CR 400W. Jones's truck was traveling toward the intersection at fifty to sixty miles per hour and over the speed limit of forty-five miles per hour. A black vehicle traveling eastward on CR 200N stopped at the two-way stop at the intersection of CR 400W and CR 200N and then crossed the intersection quickly in front of Jones's truck. At or close to the same time, Thomas "inched

up a little bit past the stop sign to look both ways," looked to the right, and then looked to the left and saw a truck which "felt like it was right in [her] window" immediately before the truck impacted her car.[1] *Id.* at 180. Jones's truck struck Thomas's car and flipped or rolled several times before coming to a stop, and Jones died as a result of the crash.

[4] The Estate, in an amended complaint, brought a wrongful death claim against the Hancock County Highway Department (the "Highway Department") and the Board. The Estate alleged in part that the Board and Highway Department owed a duty to Jones to protect the users of Hancock County roadways from dangerous conditions on the roadways and to exercise reasonable care in installing proper traffic control devices, that they breached their duty "by failing to properly and diligently monitor traffic accidents in Hancock County starting in 2008, including traffic accidents occurring at the Intersection," that they breached their duty "by failing to properly and diligently control traffic at the Intersection through the installation of an alternative traffic control device to the two-way stop which was obviously not properly controlling the Intersection," and that their "failure to monitor and properly control the Intersection were a concurring and proximate cause of serious personal injury and death to [Jones], as well as emotional damages and lost income and earnings to Nikki Jones and her two minor children." *Id.* at 66. The Estate

---

[1] One witness to the crash testified that Jones's "truck just barely missed the back of that black car" and "milliseconds later" struck the blue car driven by Thomas. Appellant's Appendix at 227.

further alleged that, according to Ind. Code § 9-21-4-1, "[a] governmental agency in Indiana that is responsible for the signing, marking, and erection of traffic control devices on streets and highways within Indiana shall follow the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways" (the "Manual"), that the Manual "further provides that such agencies shall use the [Manual] in determining the necessity of proper traffic control devices," and that the Manual "provides for the installation of a multi-way stop for several different reasons, and one factor to be considered upon completion of an engineering study, is whether there have been 'five or more reported crashes in a 12 month period that are susceptible to correction by a multi-way stop installation.'" *Id.* at 64-65.

[5] In their answer, the Board and the Highway Department "admit the Manual . . . provides guidance and instructions concerning installation of regulatory and warning signs where decisions are made by governmental entities to install such signs." *Id.* at 78. The Board and the Highway Department raised a number of affirmative defenses which included the defense of contributory negligence, that the claims are barred by any and all applicable immunities contained in the Indiana Tort Claims Act (the "ITCA"), including Ind. Code § 34-13-3-3(7) and (8), and that the Highway Department is not a proper party defendant and should be dismissed.

[6] The Board and the Highway Department subsequently filed a motion for summary judgment together with a memorandum of law in support of the motion and designated evidence, which included among other materials

portions of the depositions of Thomas and witnesses to the crash and affidavits related to the roadways and the existing county ordinances. In their motion, the Board and the Highway Department argued in part that they were immune from liability under Ind. Code § 34-13-3-3(8) for failing to convert the intersection from a two-way to a four-way stop, immune from liability for failing to adopt a law requiring landowners to trim back corn, immune for failing to inspect private property, and immune from liability for the design of CR 400W and CR 200N and the intersection. They also argued they did not have a duty to remove weeds or maintain private property and that the Highway Department was not a proper party defendant.[2] In their memorandum, the Board and the Highway Department argued that Hancock County cannot be liable for failing to convert the two-way stop at the intersection into a four-way stop because, pursuant to Ind. Code § 34-13-3-3(8), "governmental entities are immune from liability in tort for failing to install regulatory signs such as stop signs . . . ." *Id.* at 119. The designated evidence of the affidavit of the Auditor of Hancock County states that, on December 14, 1992, the Board adopted Hancock County Ordinance 1992-12F which provided that CR 400W was a preferential through road where it intersected CR 200N and that vehicles traveling on CR 200N were required to come to a complete stop at the intersection of CR 200N and CR 400W before entering the

---

[2] The Board did not move for summary judgment under Ind. Code § 34-13-3-3(7).

intersection and yield the right-of-way to other motor vehicles.[3] The affidavit also states that, on August 7, 2012, the Board adopted Ordinance No. 2012-8A establishing a four-way stop at the intersection of CR 200N and CR 400W.

[7] The Estate filed a response in opposition to the summary judgment motion together with a brief and designated evidence, which included among other materials a "200N & 400W Intersection Study" and portions of the Manual.[4] *Id.* at 298. The Estate argued that, prior to 2008, the Highway Department recorded accidents on a pushpin map after receiving accident reports from the Hancock County Sheriff's Department, that in 2008 the Sheriff's Department began to file accident reports electronically and the Highway Department effectively discontinued the use of the pushpin process, and that, "[h]ad the County continued its practice of diligently monitoring accidents at intersections, it would have seen a high frequency of accidents" at the intersection of CR 400W and CR 200N and "would have seen the necessity for an engineering study and for a four-way stop years before Matt Jones's fatal accident." *Id.* at 257. The Estate argued that the Board does not have

---

[3] The designated evidence also includes an ordinance adopted by the Board in 1973 which similarly provided that CR 400W shall be a preferential through road at its intersection with CR 200N.

[4] The portions of the Manual included in the Estate's designated evidence include a page from the definitions section, defining a "Traffic Control Device" as "a sign . . . or other device used to regulate, warn, or guide traffic" and a "Warning Sign" as a sign "that gives notice to road users of a situation that might not be readily apparent," and a page from a chapter of the Manual related to regulatory signs containing Section 2B.07, titled "Multi-Way Stop Applications." That page states in part that "Multi-way stop control can be useful as a safety measure at intersections if certain traffic conditions exist" and, under the heading of "Guidance," that "[t]he decision to install multi-way stop control should be based on an engineering study" and that "[t]he following criteria should be considered in the engineering study for a multi-way STOP sign installation: . . . B. Five or more reported crashes in a 12-month period that are susceptible to correction by a multi-way stop installation. . . ." Appellant's Appendix at 332-333.

legislative immunity, that its "claim stems primarily from the County's failure to monitor traffic accidents at the Intersection, not from a failure to adopt a law or ordinance to install a four-way stop," that it had alleged "the County failed to exercise reasonable care in installing proper traffic control devices," and that the definition of traffic control devices "includes both regulatory signs such as stop signs as well as non-regulatory signs such as warning signs." *Id.* at 266-267. The Estate also argued that "[m]onitoring traffic accident frequency, conducting engineering studies of dangerous intersections, and erecting or modifying non-regulatory signs (e.g. warning signs) are all activities that do not require ordinances or other legislative action in order to be commenced." *Id.* at 268. The Estate agreed that the Highway Department was not a proper party and that summary judgment should be granted as to it.

[8] The Board and Highway Department filed a reply memorandum and, with respect to warning signs, argued that the Estate's claim "is not predicated upon the absence of a warning sign, nor does [it] inform the court of the absence of any warning sign which in her view rendered the roads unsafe," that "there could be no such assertion on the record," and that "[a] stop sign ahead, for example, was not needed here because the driver Thomas saw the stop sign ahead and stopped before entering the intersection." *Id.* at 344-345.

[9] Following a hearing, Court Commissioner R. Scott Sirk signed an order stating there is no genuine issue of material fact and all issues are resolved by statutory immunity and granting summary judgment in favor of the County. After the Estate argued the order was not signed by the trial court judge, the court

entered an order signed by Judge Richard D. Culver containing findings of fact and conclusions thereon, finding in part that the Board and Highway Department were immune from liability under Ind. Code § 34-13-3-3 for failure to adopt an ordinance changing the traffic control devices from a two-way stop to a four-way stop prior to the accident, and that the Board and Highway Department were immune from liability for the design of the roads, and granting summary judgment in favor of the Board and Highway Department and against the Estate.

## *Discussion*

[10] The issue is whether the court erred in entering summary judgment in favor of the Board.[5] Our standard of review is the same as it is for the trial court. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* An appellate court reviewing a challenged trial court summary judgment ruling is limited to

---

[5] The Estate notes that this appeal is being brought against only the Board.

the designated evidence before the trial court, but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling. *Id.*

[11] The Estate contends that the Board was not entitled to legislative immunity because the alleged negligence did not arise from a failure to pass or enforce an ordinance, but rather arose from a failure to monitor and maintain the county's roadways in a reasonably safe condition, a duty that is not subject to legislative decision-making. The Estate's argument is that the Board failed to exercise reasonable care in installing proper traffic control devices, that such devices include non-regulatory signs such as warning signs, and that monitoring traffic accident frequency, conducting engineering studies of dangerous intersections, and erecting or modifying non-regulatory signs do not require ordinances or other legislative action in order to be commenced. It also argues that the entry of summary judgment is an incentive for counties to neglect their duty to follow the Manual, and that the Board chose to remain ignorant of the peril posed by the intersection.

[12] The Board maintains that, irrespective of how the Estate attempts to characterize its claim, tort liability is predicated upon whether or not the intersection was reasonably safe due to the two-way and not four-way stop, and that the Estate's claim is barred under Ind. Code § 34-13-3-3(8). It contends that any failure to monitor the number of traffic accidents at the intersection relates to whether the intersection should have been converted to a four-way stop prior to the accident and is not an independent basis for tort liability. The

Board further maintains that stop signs and other regulatory signs may be installed by the adoption of an ordinance, and that whether it complied with the Manual is irrelevant where legislative immunity defeats the Estate's claim as a threshold determination.

[13] Additionally, the Board argues that the Estate "does make a passing reference to the fact that non-regulatory signs such as warning signs do not require legislative action [], without advising the court what type of warning signs were needed in order to render the roadways reasonably safe" and that the Estate "offered no such evidence to the trial court either." Appellee's Brief at 16. The Board asserts that, while this court previously held that immunity did not apply to failing to install warning signs because, as conceded in that case,[6] counties do not have to adopt ordinances to install warning signs, the Estate's claim "is not predicated upon the absence of a warning sign, nor did the plaintiff inform the lower court or this court of the absence of any warning sign which in her view rendered the roads unsafe." *Id.* The Board also asserts that "[t]he record defeats any notion that additional warning signs would have imparted information Thomas did not otherwise know and act upon." *Id.* at 17.

[14] Immunity, whether under Indiana common law or the ITCA, assumes negligence but denies liability. *Putnam Cnty. Sheriff v. Price*, 954 N.E.2d 451, 453 (Ind. 2011); *Bules v. Marshall Cnty.*, 920 N.E.2d 247, 251 (Ind. 2010) ("Immunity

---

[6] *See Bd. of Commr's of the Cnty. of Harrison v. Lowe*, 753 N.E.2d 708, 710 (Ind. Ct. App. 2001), *trans. denied*.

presumes duty and breach—without duty and breach, there is no need for immunity.").  A traditional formulation of tort liability requires the plaintiff to establish a duty, breach of that duty, proximate cause, and damages.  *Price*, 954 N.E.2d at 453.  The Court has said: "In general, it is only after a determination is made that a governmental defendant is not immune under the ITCA that a court undertakes the analysis of whether a common law duty exists under the circumstances."  *Id.* (citing *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999)).  This is generally so because "immunity trumps [a claim of negligence] and bars recovery even where ordinary tort principles would impose liability."  *Id.* at 453-454 (citing *Gary Cmty. Sch. Corp. v. Roach-Walker*, 917 N.E.2d 1224, 1225 (Ind. 2009)).

[15]   At the time of the crash, Ind. Code § 34-13-3-3 (Supp. 2011) provided in part:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>
> * * * * *
>
> (7)   The performance of a discretionary function; . . . .
> (8)   The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

(Subsequently amended by Pub. L. No. 122-2013, § 2 (eff. April 30, 2013); Pub. L. No. 220-2013, § 2 (eff. July 1, 2013)).[7]

[16] In *Bd. of Comm'rs of the Cnty. of Harrison v. Lowe*, the plaintiff was traveling westward on a road and approached an intersection with a north-south thoroughfare where two signs required eastbound and westbound traffic to stop but there were no stop or yield signs posted on the north-south thoroughfare. 753 N.E.2d 708, 710 (Ind. Ct. App. 2001), *trans. denied*. The plaintiff stopped at the intersection as required, proceeded into the intersection, and was struck by a northbound vehicle. *Id.* The plaintiff filed suit against Harrison County and the driver of the northbound vehicle, alleging in part that Harrison County negligently failed to mark and sign the intersection. Harrison County asserted it was immune from liability pursuant to Ind. Code § 34-13-3-3. *Id.* Harrison County later moved for summary judgment under subsection (7) of Ind. Code § 34-13-3-3,[8] which is substantially similar to the version of subsection (8) of the

---

[7] The current version of Ind. Code § 34-13-3-3 (Supp. 2013) provides in part:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>
> * * * * *
>
> (7)     The performance of a discretionary function; . . . .
>
> (8)     The adoption and enforcement of or failure to adopt or enforce:
>
> > (A)  a law (including rules and regulations); or
> > (B)  in the case of a public school or charter school, a policy;
>
> unless the act of enforcement constitutes false arrest or false imprisonment.

[8] According to *Lowe*, the paragraph of Ind. Code § 34-13-3-3 relevant to its discussion provided that a governmental entity was not liable if a loss resulted from "(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or imprisonment[.]" *Lowe*, 753 N.E.2d at 711.

statute in effect at the time of the crash in this case, which the trial court denied on this basis.[9] *Id.* at 710-711.

[17] On interlocutory appeal, this court noted that the ITCA allows suit against government entities for torts committed by their agencies or employees but grants immunity under the specific circumstances enumerated in Ind. Code § 34-13-3-3, that whether a governmental entity is immune from liability under the ITCA is a question of law for the courts, that the ITCA is narrowly construed against the grant of immunity, that immunity assumes negligence but denies liability, and that, if immunity exists, Harrison County simply is not liable and the degree of its culpability and the nature of its tortious conduct are not relevant considerations. *Id.* at 711.

[18] The court observed that Harrison County and its Board of Commissioners were political subdivisions and that the Harrison County Board was the county's legislative body and exercised county powers by adopting ordinances. *Id.* at 711-712. The court noted that, as a local authority, the Harrison County Board may adopt by ordinance traffic regulations with respect to streets and highways under its jurisdiction provided they do not conflict with or duplicate a statute. *Id.*

---

[9] The trial court granted Harrison County partial summary judgment on certain other grounds, namely, that it had immunity with respect to the design of the roads and had no legal duty to remove weeds or vegetation. *Lowe*, 753 N.E.2d at 710-711.

[19]     Following a review of previous opinions discussing the application of Ind. Code § 34-13-3-3, the court held that the provision under subsection (7), which was similar to that found under subsection (8) at the time of the crash in this case, "unambiguously sheltered [Harrison County] from civil liability for its failure to adopt traffic control ordinances." *Id.* at 718. The court further held that Harrison County was "immune for its failure to adopt ordinances to erect or change the placement of stop signs . . . at the intersection in question." *Id.* at 720. The court also held that, "[s]ince [Harrison County] is entitled to immunity on this issue, any actual knowledge it might have had regarding the dangerous condition of the intersection is inconsequential" and "[t]hus, we need not determine whether [Harrison County's] knowledge of the allegedly dangerous condition of the intersection imposed upon it a duty to remedy the condition by adopting traffic control ordinances." *Id.* (footnote omitted).

[20]     After finding that Harrison County was immune from liability for its failure to adopt ordinances regarding stop signs, the court addressed whether Harrison County was entitled to summary judgment with respect to its failure to erect warning signs. *Id.* The court observed that Harrison County had not moved for summary judgment on this issue and that, since it failed to meet its burden to demonstrate the absence of a question of fact regarding warning signs, the plaintiffs were not required to designate this issue or any relevant evidence in response to Harrison County's motion. *Id.* The court held Harrison County was not entitled to summary judgment with respect to this claim. *See id.*

[21] In this case, the Board as a political subdivision is a governmental entity for purposes of the ITCA, *see* Ind. Code § 34-6-2-49 (defining governmental entities for purposes of Ind. Code §§ 34-13-3 as the state or a political subdivision of the state); Ind. Code § 34-6-2-110(1), (10) (defining political subdivision to include a county and a board or commission of a county), and, if a board of county commissioners is a county's legislative body, the board exercises its powers by adopting ordinances. *See* Ind. Code § 36-1-2-9 (defining legislative body to include a board of county commissioners); Ind. Code § 36-1-3-6 (providing that a unit wanting to exercise a power must, if the unit is a county, adopt an ordinance); *Lowe*, 753 N.E.2d at 711-712.

[22] Further, as a local authority under Ind. Code § 9-13-2-94(b)[10] and Hancock County's legislative body, the Board may adopt by ordinance traffic regulations with respect to highways under its jurisdiction. *See* Ind. Code § 9-21-1-2 (providing "a local authority may adopt by ordinance traffic regulations"); Ind. Code § 8-17-1-40 (providing a "county legislative body may adopt ordinances regulating traffic on any highway in the county highway system"); *Lowe*, 753 N.E.2d at 712. In addition, Ind. Code § 9-21-1-3(a) provides in part:

> A local authority, with respect to private roads and highways under the authority's jurisdiction, in accordance with sections 2 and 3.3(a) of this chapter, and within the reasonable exercise of the police power, may do the following:

---

[10] Ind. Code § 9-13-2-94 provides that "Local authorities" means every county having authority to adopt local police regulations under the laws and the Constitution of the State of Indiana.

(6)    Designate a highway as a through highway and require that all vehicles stop before entering or crossing the highway.

(7)    Designate an intersection as a stop intersection and require all vehicles to stop at one (1) or more entrances to the intersection.[11]

[23]    The Board's designated evidence includes an affidavit of the Auditor of Hancock County, which states that Hancock County Ordinance 1992-12F, which had been adopted by the Board on December 14, 1992, provided that CR 400W was a preferential through road where it intersected CR 200N and that vehicles traveling on CR 200N were required to come to a complete stop at the intersection of CR 200N and CR 400W before entering the intersection and yield the right-of-way to other motor vehicles. The adoption of this ordinance by the Board designated CR 400W as a through highway, *see* Ind. Code § 9-21-1-3(a), and the ordinance was adopted to regulate traffic using CR 400W and CR 200N. *See* Ind. Code § 9-21-1-2; Ind. Code § 8-17-1-40. Pursuant to Ind. Code § 34-13-3-3(8), the Board is not liable if any loss results from the adoption of Hancock County Ordinance 1992-12F designating CR 400W as a through road and not requiring drivers on that road to come to a stop where CR 400W intersects CR 200N. *See Lowe*, 753 N.E.2d at 720 (holding the county was

---

[11] Subsections (6) and (7) are identical to those provisions as they existed at the time Hancock County Ordinance 1992-12F was adopted in December 1992. *See* Pub. L. No. 2-1991, § 9 (1991).

immune for its failure to adopt ordinances to erect or change the placement of stop signs at the intersection). The Board is sheltered from civil liability for any failure to adopt traffic control ordinances. *See id.* at 718 (holding Ind. Code § 34-13-3-3 unambiguously sheltered the county from civil liability for its failure to adopt traffic control ordinances).

[24] Based upon the designated evidence, we conclude that the Board is immune under Ind. Code § 34-13-3-3(8) from liability for any loss resulting from the adoption of Hancock County Ordinance 1992-12F or any failure to adopt an ordinance, in response to the frequency of traffic accidents discovered by monitoring or for any other reason, or take other legislative action related to the intersection of CR 400W or CR 200N. *See Lowe*, 753 N.E.2d at 718-720. *See also Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 522 n.20 (Ind. Ct. App. 2005) (noting that the county would be immune under Ind. Code § 34-13-3-3(8) for its failure to pass an ordinance to reduce the speed limit and citing *Lowe*), *reh'g denied*, *trans. denied*. Because the Board is entitled to immunity on this issue, any actual knowledge it may have had regarding any dangerous condition of the intersection is inconsequential, *see Lowe*, 753 N.E.2d at 720, and we need not address whether a duty existed, under the Manual or otherwise, which may have supported a negligence action against the Board based on any action or inaction of the Board as Hancock County's legislative body. *See Price*, 954 N.E.2d at 453-454 (noting that immunity trumps a claim of negligence and bars recovery even where ordinary tort principles would impose liability); *Lowe*, 753 N.E.2d at 711 (if immunity exists, the governmental entity

simply is not liable and the degree of its culpability are not relevant considerations).

[25] Having found that the Board is immune from liability for any loss resulting from the adoption of Hancock County Ordinance 1992-12F or for its failure to adopt any traffic control ordinance with respect to the intersection of CR 400W or CR 200N, we turn to whether the County was entitled to summary judgment with respect to its alleged failure to monitor the frequency of accidents at the intersection and to erect appropriate warning signs. We observe that, in its motion for summary judgment and supporting memorandum, while the County argued it was immune from liability under Ind. Code § 34-13-3-3(8) for failing to convert the intersection from a two-way stop to a four-way stop, it did not request summary judgment with respect to any claim that it failed to install warning signs or other non-regulatory signs.

[26] The County acknowledges the holding in *Lowe* with respect to warning signs but argues that the Estate's claim is not predicated upon the absence of a warning sign and did not inform the lower court or this court of the warning sign which rendered the roads unsafe.[12] However, since the County did not request summary judgment with respect to the claim it failed to install warning signs, the Estate was not required to designate this issue or evidence with

[12] At the hearing on its summary judgment motion, the County stated there was a distinction between regulatory signs and warning signs, that ordinances are not required for a warning sign, that the Estate's claim is not predicated upon the absence of a warning sign nor could it be, and that the Estate offers no response asserting that warning signs are needed to render the roadways or the intersection reasonably safe.

respect to this issue in response to the summary judgment motion. *See Lowe*, 753 N.E.2d at 720 ("Since [Harrison County] failed to meet its burden to demonstrate the absence of a question of fact regarding warning signs, the [plaintiffs] were not required to designate this issue or any relevant evidence in response to [Harrison County's] motion."). Further, the Estate's amended complaint alleged that the County failed to control traffic at the intersection of CR 400W or CR 200N through the installation of an alternative traffic control device, and in its materials filed in opposition to the County's summary judgment request, the Estate designated the definitions contained in the Manual indicating that the term "Traffic Control Device" includes signs to "warn, or guide traffic" and argued that erecting or modifying non-regulatory signs such as warning signs does "*not* require ordinances or other legislative action." Appellant's Appendix at 268, 332. Also, the Estate argues the County could have installed a warning sign related to the intersection of CR 400W or CR 200N for drivers using CR 400W.[13] The County did not request and is not entitled to summary judgment with respect to the claim that it failed to erect appropriate warning signs.

[27] Based upon the summary judgment materials and *Lowe*, we reverse the entry of summary judgment as to the claim the County failed to erect warning signs,

---

[13] Section 2C.46 of the Manual relating to intersection warning signs discusses a cross road symbol which may be used in advance of an intersection to indicate the presence of an intersection and the possibility of turning or entering traffic, and the Manual provides guidelines as to the size of the sign and advance placement distances.

affirm the entry of judgment in all other respects, and remand for further proceedings.

## *Conclusion*

[28] For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

[29] Affirmed in part, reversed in part, and remanded.


Kirsch, J., and Mathias, J., concur.