Cynthia JOSEPH; Justin Joseph, by Next Friend Gregory Joseph; Julia Joseph, by Next Friend Gregory Joseph and Gregory Joseph, Appellants–Plaintiffs,

v.

LaPORTE COUNTY, Indiana, a Municipal Corporation; Board of Commissioners of LaPorte County, Indiana; Highway Department of LaPorte County, Indiana; State of Indiana; Department of Highways, State of Indiana, Appellees–Defendants.

No. 64A03–9501–CV–6.

Court of Appeals of Indiana.

June 20, 1995.

Rehearing Denied Sept. 6, 1995.

---

**1182**

Richard A. Miller, Mitchell A. Peters, Gouveia & Miller, Merrillville, for appellants.

Martin W. Kus, David P. Jones, Newby, Lewis, Kaminski & Jones, Eric F. Yandt, Bokland, Yandt & Friedman, LaPorte, Carrie G. Doehrmann, Office of Atty. Gen., Indianapolis, for appellees.

## OPINION

STATON, Judge.

Cynthia Joseph, Justin Joseph, Julia Joseph, and Gregory Joseph (collectively "Joseph") appeal the grant of summary judgment in favor of LaPorte County, the Board of Commissioners of LaPorte County ("Board"), and the Highway Department of LaPorte County (collectively "LaPorte").[1] Joseph claims injuries from the negligent posting of a forty-five mile per hour speed limit and the failure to erect warning signs near a dangerous intersection. Joseph raises three issues on appeal which we restate as follows:

I. Whether the trial court erred in granting summary judgment to LaPorte because the Board's decision to post the speed limit was an operational function.

II. Whether the trial court erred in granting summary judgment to LaPorte because the failure to post the established speed limit was an operational omission.

III. Whether the trial court erred in granting summary judgment to LaPorte because the failure to place warning signs at the intersection was an operational omission.

We affirm in part, reverse in part, and remand.

The facts most favorable to the non-movant, Joseph, are as follows. Cynthia Joseph and her two children suffered severe, permanent injuries from an automobile accident at the intersection of Johnson Road and County Road 400 West in LaPorte County, Indiana. The speed limit for westbound traffic approaching the intersection was posted at forty-five m.p.h., which exceeds accepted standards. Further, based upon the applicable ordinances, the speed limit was incorrectly posted; it should have been thirty-five m.p.h. Finally, no warning signs were posted at the intersection, contrary to acceptable stan-

---

1. The State of Indiana and the Indiana State Department of Highways were parties to the original suit, but did not move for summary judgment and remain defendants in the underly- ing action. Joseph successfully moved the trial court to certify the grant of summary judgment as a final appealable judgment under Trial Rule 54(B).

dards. These factors combined to make the intersection inherently dangerous and caused Joseph's injuries.[2]

LaPorte moved for summary judgment based upon governmental immunity for performance of a discretionary function. The trial court granted the motion and Joseph appeals.

## I.

### Setting Speed Limit

Joseph first argues that the trial court erred in holding that the Board exercised a discretionary function when posting the speed limit. Joseph argues that the posted forty-five m.p.h. speed limit was excessive for Johnson road.

■ Summary judgment is appropriate only when the moving party proves there is no genuine issue of material fact and they are entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Once the movant has sustained this burden, the opponent must respond by setting forth facts showing a genuine issue for trial; they may not simply rest on the allegations of their pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, and any other matters on which they rely for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194. We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

■ The Indiana Tort Claims Act ("ITCA") allows suit against government entities for torts committed by their agencies or employees. Ind.Code §§ 34–4–16.5–1 to 20. The ITCA grants government entities immunity under specific circumstances. Among those circumstances, "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... [t]he performance of a discretionary function[.]" I.C. § 34–4–16.5–3(6).[3]

■ The Indiana Supreme Court has offered guidance as to what constitutes discretionary functions under the ITCA. Discretionary-function immunity shields only those policy decisions which cannot be assessed by tort standards. *Peavler v. Monroe Cty. Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40, 45. In making this determination, we apply the planning/operation test. *Id*, at 46. Planning functions are discretionary and therefore shielded by immunity, while operational functions are not. Planning functions involve the "formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices." *Voit v. Allen County* (1994), Ind. App., 634 N.E.2d 767, 770, *trans. pending*. Operational functions involve the "execution or implementation of already formulated policy." *Id.*

■ Whether an act is discretionary and therefore shielded by immunity is a question of law for the court. *Peavler, supra*, at 46. The essential inquiry is whether the legislature intended acts such as those challenged to enjoy immunity. *Id.* We narrowly construe immunity because it provides an exception to the general rule of liability. *Id.* If the establishment of a particular speed limit arises from an affirmative policy decision, tort standards provide an inadequate basis

---

**2.** For purposes of our review, we consider the facts in the light most favorable to Joseph. Trial Rule 56(C). Since the summary judgment motion rests on immunity, we presume negligence, as such the issues of breach and causation are not before us. *Peavler, infra*, at 46.

**3.** LaPorte's decision to set the speed limit at forty-five m.p.h. is shielded by immunity from suit under the ITCA as a legislative function.

I.C. § 34–4–16.5–3(7) (immunity for adoption or failure to adopt laws); *Cromer, infra*, at 665. We address discretionary immunity only because LaPorte failed to present the legislative immunity argument to the trial court in their motion for summary judgment. *Brougher Agency v. United Home Life Ins.* (1993), Ind.App., 622 N.E.2d 1013, 1018, *trans. denied*.

for evaluating the decision. However, if a speed limit is established based upon professional judgment, tort standards for professional negligence form an adequate basis for evaluation. Thus, we conclude that setting speed limits does not so clearly implicate government policy that all such decisions are discretionary as a matter of law. *See Peavler, supra,* at 47.

 Accordingly, LaPorte bears the burden of proving that the challenged act or omission was a policy decision made after consciously balancing risks and benefits. *Id.* LaPorte may do so by proving that the Board consciously considered the Johnson road speed limit. *Id.,* at 48. This proof might take the form of Board meeting minutes, comprehensive ordinances, or any other method which shows the Board made an affirmative policy decision. *Id.*

To carry their burden, LaPorte introduced several ordinances which set the speed limit for Johnson road. Most revealing is the ordinance from 1982 ("1982 ordinance") which set speed and load restrictions and included this preamble:

WHEREAS, the [Board] ha[s] decided *it is essential for the safety of the traveling public* to establish a forty-five mile per hour speed zone on said road; and,

* * *

WHEREAS, *the citizens of LaPorte County depend on the daily use of county roads for the normal flow of community services,* including mail deliver, school bus services, home to job travel, and home to market travel; and,

WHEREAS, the load-carrying capacities of said road are insufficient to accommodate excessive loads and,

WHEREAS, vehicular wheel loads that exceed the load-carrying capacity of road pavements and road foundations can produce *serious destruction and damage to the road pavements* and road foundations, causing inconvenience to the traveling public and necessitating excessive and expensive road repairs and maintenance; and,

WHEREAS, the [Board] desire[s] to *reduce the road damage and destruction, to reduce the inconvenience to the traveling*

*public,* and to conserve the repair and maintenance funds for the general improvement of the county highway system for the benefit of the traveling public;

IT IS THEREFORE ORDAINED: [that the speed limit shall be forty-five m.p.h. on Johnson road except where lower speed limits are posted. Also, certain load limits are established].

Record, p. 108 (emphasis added).

We conclude that the Board made a policy decision to set the speed limit at forty-five m.p.h. after consciously weighing risks and benefits. The preamble illustrates the Board's attempt to balance safety interests against the interest of smooth traffic flow. This is a policy decision reserved for the popularly-elected executive branch and not subject to judicial review. *See Peavler, supra,* at 44. This is a planning function because the issue is "not negligence but social wisdom, not due care but political practicability, not unreasonableness but economic expediency." *Id.,* at 45 (quoting *Blessing v. United States* (1978), E.D.Penn., 447 F.Supp. 1160, 1172). To require more than the preamble's statement of concerns and competing interests would bind government entities to memorialize in exhausting detail the reasons for every decision they render. We believe this is more than *Peavler* requires.

Joseph argues the establishment of the speed limit was an operational function for two reasons: (1) the ordinance only reiterated prior speed limits, and (2) the Board was required by statute to set speed limits. Both arguments fail. First, we conceive of no requirement that a government entity must change prior law to render a discretionary decision. Second, the crucial question is not whether LaPorte had to post a speed limit, but did they have to post the particular speed limit which Joseph alleges was excessive. The Board was not required to establish this speed limit, but acted in their discretion after demonstrably balancing factors to arrive at this conclusion.

The trial court properly entered summary judgment on this issue. There are no issues of material fact and the Board's designation

of the speed limit was a discretionary policy decision as a matter of law.

## II.

### *Improper Speed Limit*

Joseph next argues that the trial court erred in holding that the Board exercised a planning function when posting an incorrect speed limit sign at the intersection. Joseph claims that the Board set the speed limit at thirty-five m.p.h. near the intersection, but failed to properly post it for the westbound traffic.

Joseph designated an affidavit from an expert witness which avers that, based upon the applicable ordinances, the Board had established a thirty-five m.p.h. speed limit for the relevant stretch of Johnson road, but failed to post this speed limit east of the intersection.[4] The incorrect posting, in part, caused the accident. LaPorte, without citation, argues that this immunity question is necessarily decided by the resolution of the above issue. We find no authority for LaPorte's position.

■ Summary judgment is proper if we determine that posting the incorrect sign was a discretionary activity as a matter of law. This is patently untrue. Discretionary immunity covers only those matters for which tort standards provide an insufficient means to evaluate the claim. *Peavler, supra*, at 46. Joseph's claim on this issue fits squarely with our standards of tort law; i.e., LaPorte's agents had a duty to post the established speed limit and they failed to do so, resulting in Joseph's injuries. As such, we conclude that this negligent oversight is not the "type of function which the legislature intended to protect with immunity." *Id.*

Posting incorrect speed limits cannot be discretionary. There was no "policy decision made by consciously balancing risks and benefits", only operational oversight. *Id.* Posting speed limits involves nothing more than implementing established policy. The *Peavler* court offered the failure to properly maintain a warning sign as an archetypal example

of an operational function. *Id,* at 47. Maintaining a warning sign is analogous to correctly posting an established speed limit; both involve a non-discretionary mandate to implement established policy. Both are clearly operational functions.

We can conceive of no circumstances by which failing to post the correct speed limit could be a discretionary function. Thus, we reverse the trial court's entry of summary judgment on this issue.

## III.

### *Failure to Place Warning Signs*

Joseph's final argument is that the trial court erred in holding that the Board exercised a planning function when failing to place warning signs at the intersection. We employ the same standard of review as with the above issues.

■ LaPorte again assumes, without citation, that immunity for setting the Johnson road speed limit confers immunity for failing to place warning signs at the intersection. This assumption is incorrect as the decision to establish a speed limit is distinct from the decision to omit warning signs. *See Cromer v. City of Indianapolis* (1989), Ind.App., 540 N.E.2d 663, 666 (planning decision not to redesign road does not confer automatic immunity for failing to post warning signs on that road).

■ Decisions regarding the placement of warning signs are not *per se* discretionary. *Peavler, supra*, at 47. LaPorte bore the burden of proving that the decision not to place warning signs at the intersection was a policy decision made after consciously balancing risks and benefits. *Id,* at 46. The only designated material concerning warning signs at the intersection is the Board's notation of a complaint requesting signage be posted or grass and weeds cut to increase visibility at the intersection. The Board referred the matter to the Highway Department.

The signage complaint, however, was received over two months after the accident

---

4. The speed limit reduction is properly posted for eastbound traffic approaching the intersection, but not for westbound traffic.

and does not indicate that a policy decision was made not to post warning signs. Further, a reactionary approach of posting warning signs only after receiving complaints is not a *Peavler*-type decision-making process. *Board of Comm'rs v. Price* (1992), Ind.App., 587 N.E.2d 1326, 1330–1331, *trans. denied.* The trial court erred in entering summary judgment on the issue of LaPorte's immunity for failing to post warning signs at the intersection.

In summary, the trial court properly entered summary judgment on the issue of LaPorte's immunity for setting the speed limit for Johnson road. The court erred, however, in determining that LaPorte had immunity for posting the incorrect speed limit and for failing to post warning signs.

Our conclusion does not mean that LaPorte is necessarily liable for Joseph's injuries. We only decided that they are not shielded by immunity as a matter of law on the second and third issues. If, upon remand, LaPorte presents factual evidence proving that the Board engaged in a policy oriented decision-making process in omitting warning signs from the intersection, the judiciary will not second-guess their judgment.

For the foregoing reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

GARRARD, and BAKER, JJ., concur.