

ATTORNEYS FOR APPELLANTS

David W. Stone IV
Anderson, Indiana

John H. Shean
Brandon E. Hall
Bloomington, Indiana

ATTORNEYS FOR APPELLEES

James S. Stephenson
Ian L. Stewart
Stephenson Morow & Semler
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jalen Lee, A Minor Child, by and through his Next Friend, Crystal Estes and Crystal Estes, Individually,

*Appellants-Plaintiffs,*

v.

Bartholomew Consolidated School Corporation, City of Columbus, Columbus City Planning Commission and Columbus Police Department,

*Appellees-Defendants.*

April 11, 2017

Court of Appeals Case No. 03A01-1608-CT-1900

Appeal from the Bartholomew Circuit Court

The Honorable Stephen R. Heimann, Judge

Trial Court Cause No. 03C01-1501-CT-177

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Plaintiffs, Jalen Lee (Lee)—by his next friend, Crystal Estes—and Crystal Estes individually, appeal the trial court's summary judgment in favor of Appellee-Defendant, City of Columbus (City).[1]

We reverse and remand.

# ISSUE

Lee raises four issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred in granting the City's motion for summary judgment.

# FACTS AND PROCEDURAL HISTORY

On March 11, 2013, thirteen-year-old Lee, an eighth-grade student at Central Middle School in the Bartholomew Consolidated School Corporation, left his house at approximately 7:00 a.m. to walk the short distance to Columbus East High School, where he would get on a school bus to be taken to Central Middle School. That particular morning, it was raining and still dark outside, but Lee had walked the same route to the high school every day throughout his seventh and eighth grade years, regardless of the weather or season. Lee was wearing a black hooded sweatshirt and blue jeans. As always, Lee was joined on his walk

---

[1] The Columbus City Planning Commission and Columbus Police Department were also originally named as defendants but, by stipulation of the parties, have been dismissed from the action. In addition, Bartholomew Consolidated School Corporation is also listed as a defendant; however, it did not join in the motion for summary judgment and did not file an appellate brief.

to school by his friend, Jacob Rhodes (Rhodes), who lived on the same street as Lee. As Lee and Rhodes neared the high school, Rhodes observed a coin on the ground and stopped to pick it up. Lee kept walking.

[5] The last leg of Lee's trip to school required him to cross Marr Road. A mid-block crosswalk on Marr Road provided a direct path from the school's athletic fields on the east side of Marr Road to the high school on the west side of Marr Road. The crosswalk consisted of high visibility markings on the pavement, and there were two reflective signs on each side of the crosswalk to alert approaching drivers to the possibility of pedestrians (*i.e.*, a "Crosswalk Ahead" sign 209 feet away from the crosswalk, and a "Crosswalk" sign thirteen feet away from the crosswalk). (Appellants' App. Vol. III, p. 141). Also, drivers approaching the crosswalk from either direction observed two speed limit signs. In the northbound lane, the first sign drivers passed was 1,264 feet from the crosswalk and indicated a school zone speed limit of twenty miles per hour; the second sign was 427 feet away from the crosswalk and established a regular speed limit of thirty miles per hour. In the southbound lane, the school zone and regular speed limit signs were placed directly next to each other, approximately one-half mile away from the crosswalk.[2]

---

[2] While a placard was added to the school zone speed limit signs on August 29, 2013, to indicate that the twenty miles per hour speed limit is in effect only during certain school hours, on March 11, 2013, the signs generically provided for a school zone speed limit of twenty miles per hour.

[6] Lee used the Marr Road crosswalk to walk to Columbus East High School every day. He knew to look both ways before crossing, and it was his habit to wait for a vehicle to come to a full stop before crossing instead of assuming that a slowing vehicle would fully stop. On this day, when Lee reached the Marr Road crosswalk, he looked both ways and saw a vehicle approaching in the northbound lane. That vehicle, a red 2006 Dodge Ram 3500 diesel pickup truck, was driven by Kyle McLeod (McLeod), who was on his way to work. McLeod had driven the same route along Marr Road at least 100 times, and he was familiar with the crosswalk and had previously stopped to allow children to cross. At the time, McLeod stated that he was traveling between twenty-five and thirty miles per hour and had his headlights on. McLeod did not see anyone near the crosswalk as he approached, and although Lee had observed McLeod's truck, Lee believed that he had sufficient time to cross Marr Road without causing the oncoming vehicle to have to adjust its speed or stop. Accordingly, Lee proceeded to cross, and McLeod never noticed him in the crosswalk until he heard an impact and saw Lee "flying down the road." (Appellants' App. Vol. II, p. 193). McLeod immediately slammed on his brakes and exited his vehicle as he called 911; meanwhile, Rhodes ran to check on Lee, who was lying on the ground approximately seventy-five feet away from the crosswalk. Lee survived the accident, although he does not have any memory of what occurred between the time he stepped into the crosswalk and when he woke up at Riley Hospital for Children in Indianapolis. Lee sustained a broken femur, multiple fractured ribs, a collapsed lung, a lacerated spleen, and other abrasions.

[7]     On January 9, 2015, Lee filed a Complaint, alleging that the City was negligent in the performance of its duties to those students who utilize the school buses for transport to Central Middle School and that this negligence proximately caused the accident and resulting injuries to Lee. The Complaint also alleged that the City "negligently failed to take reasonable measures to warn pedestrians utilizing the Crosswalk and drivers on Marr Road of the particular dangers of the Crosswalk so as to reasonably mitigate the known dangers of the Crosswalk." (Appellants' App. Vol. II, p. 26). Per Lee, this failure to warn proximately caused his injuries.[3]

[8]     On March 22, 2016, the City filed a motion for summary judgment, claiming that it was entitled to judgment as a matter of law on several grounds. First, the City argued that it did not breach its duty of reasonable care because Marr Road and the crosswalk were reasonably safe and there were adequate warnings to alert drivers to the crosswalk. Second, the City contended that, as a matter of law, it did not proximately cause the accident or Lee's injuries because McLeod was driving the vehicle and was aware of the crosswalk's existence. Third, the City claimed that it was entitled to statutory immunity as a governmental entity pursuant to the Indiana Tort Claims Act. In particular, the City asserted that it was not liable for any loss attributable to the roadway's design because Marr Road and the crosswalk had not been altered for over twenty years prior to the

---

[3] The Chronological Case Summary indicates that Lee filed an amended complaint on January 26, 2015; however, only the January 9, 2015 Complaint was included in the appellate record.

accident per Indiana Code section 34-13-3-3(18); it was not liable per Indiana Code section 34-13-3-3(7) (discretionary function immunity) because it was in the planning stages of making improvements to the crosswalk—specifically, the installation of flashing lights; and it was not liable for failing to impose a lower speed limit on Marr Road, install a stop sign at the crosswalk, or station crossing guards at the crosswalk per Indiana Code section 34-13-3-3(8) (immunity for failure to adopt or enforce laws). Fourth, the City also posited that it should be afforded common law immunity based on any alleged failure to take additional police action to enhance safety on Marr Road and at the crosswalk. Finally, the City argued that Lee's claim was barred based on his own contributory negligence and Lee's violation of Indiana Code section 9-21-17-5.

[9] On May 3, 2016, Lee designated evidence to support his opposition to the City's summary judgment motion. The trial court subsequently conducted a hearing on the City's summary judgment motion. On July 15, 2016, the trial court granted summary judgment to the City. The trial court found that Lee's claim was barred because Lee, in light of his "age, his knowledge, his judgment, and his experience," was contributorily negligent as a matter of law. (Appellants' App. Vol. II, p. 21). On August 3, 2016, the trial court entered final judgment in favor of the City.

[10] Lee now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

Lee appeals from the trial court's entry of summary judgment in favor of the City. We adhere to a well-settled standard of review in summary judgment cases:

> Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Our review of a summary judgment motion is limited to those materials designated to the trial court. We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. . . .

> In reviewing a grant of summary judgment we face the same issues as the trial court and follow the same process. Under Trial Rule 56(C), the moving party bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. If it is successful, the burden shifts to the nonmoving party to designate evidence establishing the existence of a genuine issue of material fact.

*Wabash Cnty. Young Men's Christian Ass'n v. Thompson*, 975 N.E.2d 362, 364–65 (Ind. Ct. App. 2012) (internal citations omitted), *trans. denied*. "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Hamilton v. Ashton*, 846 N.E.2d 309, 314, *clarified on reh'g*, 850 N.E.2d 466 (Ind. Ct. App. 2006), *trans.*

*denied.* The trial court's grant of summary judgment "is clothed with a presumption of validity," and Lee bears the burden of establishing that the trial court erred. *Id.* "If the trial court's ruling can be sustained on any theory or basis supported by the record, we must affirm." *Id.*

For negligence cases, "[s]ummary judgment is rarely appropriate" because these cases "are particularly fact-sensitive and are governed by a standard of the objective reasonable person." *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 19 (Ind. Ct. App. 2015). Thus, negligence cases are generally better suited for a jury determination after hearing all the evidence. *Id.* Nevertheless, in order for the City to prevail on its summary judgment motion, it "must show that the undisputed material facts negate at least one of the elements essential to the negligence claim, or that the claim is barred by an affirmative defense." *Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 526 (Ind. Ct. App. 2004), *trans. denied*.

## II. *Contributory Negligence*

In this case, the trial court found that the City's affirmative defense of contributory negligence was dispositive. When a tort claim is filed against a governmental entity, such as the City, the Comparative Fault Act—which provides that "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery"— does not apply. Ind. Code §§ 34-51-2-2; -5; -6; *see Hill v. Gephart*, 54 N.E.3d 402, 406 (Ind. Ct. App. 2016), *clarified on reh'g, trans. denied*. Rather, the

common-law doctrine of contributory negligence applies. *Hill*, 54 N.E.3d at 406. Therefore, "if a plaintiff is negligent to even a small degree and that negligence proximately contributes to his claimed damages, contributory negligence will operate as a complete bar to his action." *Id.* Here, the trial court found that Lee's claim against the City was barred based on his own contributory negligence. Specifically, the trial court found that Lee "knew what he was supposed to do for his own safety: wait for a vehicle to stop before you cross a road. Instead of waiting, he chose to cross." (Appellants' App. Vol. II, p. 20).

[14] It is well established that a plaintiff "is contributorily negligent when his conduct falls below the standard to which he should conform for his own protection and safety." *Hill*, 54 N.E.3d at 406. Because "[n]egligence depends upon the lack of reasonable care that an ordinary person would exercise in like or similar circumstances," "contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise." *Id.* Generally, contributory negligence is a question of fact for a jury. *Id.* However, it may be a question of law appropriate for summary judgment "if the facts are undisputed and only a single inference can be drawn therefrom." *Id.* at 406-07.

[15] In this case, Lee was thirteen years old at the time of the accident. The standard of care for a child is well established: "a child between seven and [fourteen] is required to exercise due care for his or her own safety under the circumstances and that the care is required to be measured by that ordinarily

exercised under similar circumstances by children of the same age, knowledge, judgment, and experience." *Clay City Consol. Sch. Corp. v. Timberman*, 918 N.E.2d 292, 295 (Ind. 2009). That said, in Indiana, there is also a "presumption that children between the ages of seven and [fourteen] are incapable of contributory negligence." *Id.* at 297. However, this presumption is rebuttable, and a child may be found contributorily negligent if the defendant presents evidence that the child is "accountable for his actions" based on his age, mental capacity, intelligence, and experience. *Id.* at 298.

[16] Lee contends that the trial court erred in granting summary judgment because the facts of the case are subject to more than one inference, thereby precluding a determination that he was contributorily negligent as a matter of law. Lee relies on *Maldonado by Maldonado v. Gill*, 502 N.E.2d 1371, 1371-72 (Ind. Ct. App. 1987), *trans. denied*, in which an eight-year-old plaintiff looked both ways, stepped out into the street from in-between two parked cars, and was struck by a vehicle. There was evidence that the driver of the vehicle had failed to stop at a stop sign and was speeding at the time of the impact. *Id.* at 1373. Our court found that the trial court erred in determining that the plaintiff was contributorily negligent as a matter of law because "the uncontroverted evidence that [the plaintiff] stopped and looked before attempting to cross the street [was] sufficient to create an inference that he acted reasonably"; thus, whether the child's "behavior constituted contributory negligence [was] a question of fact." *Id.*

[17]     In turn, the City argues that summary judgment was proper. The City cites *Smith v. Diamond*, 421 N.E.2d 1172, 1179 (Ind. Ct. App. 1981), where our court found that the trial court was justified in concluding, as a matter of law, that a twelve-year-old boy was contributorily negligent when he sustained injuries after crossing into the street, admittedly without checking to see whether traffic was approaching in the northbound lane. The City points out that Lee was a year older than the plaintiff in *Smith* and, as in *Smith*, had been instructed on proper traffic safety. The City emphasizes that Lee had crossed the Marr Road crosswalk twice a day throughout his seventh and eighth grade years without incident and knew that he should never cross the street until a slowing vehicle fully stopped. Yet, "despite seeing the approaching truck and the headlights of the truck that would eventually strike him, Lee chose to enter the road" and is therefore, according to the City, contributorily negligent. (Appellee's Br. p. 16).

[18]     We find that the record contains genuine issues of material fact to preclude summary judgment on the basis of contributory negligence. Unlike in *Smith*, where the plaintiff failed to check whether any traffic was coming from the northbound lane, Lee did check in both directions for traffic and observed McLeod's vehicle. However, he believed that the vehicle "was [at] a distance to where I thought I could cross without him having to slow down or stop or anything like that." (Appellants' App. Vol. II, p. 42). Similarly, in his deposition, Lee's friend, Rhodes, claimed that he also saw McCleod's truck as they approached the crosswalk and, like Lee, believed that there was sufficient time to traverse the crosswalk. According to Rhodes, McLeod's "truck was just

so far down the street. It wasn't even in our minds that it would even be going that fast to even hit us." (Appellants' App. Vol. III, p. 115). In fact, Rhodes stated that, had he not stopped to pick up the coin, he would have felt safe in entering the crosswalk at the same time as Lee. Furthermore, although McLeod averred that he was travelling between twenty-five and thirty miles per hour at the time of the accident, Rhodes estimated that McLeod's speed must have been closer to thirty-five or forty miles per hour. As in *Maldonado*, we find that these facts give rise to an inference that Lee may have acted reasonably in entering the crosswalk after looking both ways and assessing that he had sufficient time to cross.

[19] Nonetheless, the City also maintains that Lee was contributorily negligent/negligent *per se* because he violated Indiana Code section 9-21-17-5, which provides that "[a] pedestrian may not suddenly leave a curb or other place of safety and walk or run into the path of a vehicle that is so close as to constitute an immediate hazard." Our court has noted that "the violation of a statute by a child must not be considered in the light of any presumption of negligence." *Maldonado*, 502 N.E.2d at 1373. Rather, the "violation of a statute of this nature by a child is in itself only some evidence of negligence, at least where the child's activity is one which does not require adult qualifications." *Smith*, 421 N.E.2d at 1180 n.7. For the same reasons already discussed, we cannot say that Lee's conduct constitutes a violation of the statute rendering him contributorily negligent as a matter of law. There is a genuine evidentiary dispute as to whether Lee "suddenly [left]" the curb in the face of

"an immediate hazard" given his genuine belief that McLeod's vehicle was sufficiently far away that he could safely cross. I.C. § 9-21-17-5. Because the evidence leads to multiple inferences as to whether a thirteen-year-old boy acted reasonably in crossing the street despite the presence of an oncoming vehicle, we find that the issue of contributory negligence was not a proper basis for summary judgment and should have been reserved for determination by a jury.

### III. *Statutory Immunity*

[20] Despite our finding that the trial court erred in granting summary judgment on the basis that Lee was contributorily negligent, we may nevertheless affirm the trial court's summary judgment if it can be sustained on any other basis supported by the record. *Hamilton*, 846 N.E.2d at 314. In its motion for summary judgment, the City claimed that it was entitled to judgment as a matter of law based on certain statutory immunities. The Indiana Tort Claims Act (ITCA) provides that governmental entities may be liable for torts committed by their agencies or employees. *See* I.C. Ch. 34-13-3. However, under certain circumstances, the governmental entity is entitled to immunity for those acts. *Joseph v. LaPorte Cnty.*, 651 N.E.2d 1180, 1183 (Ind. Ct. App. 1995), *trans. denied*. Whether the ITCA imparts immunity to a governmental entity is a question of law for the court to decide. *Savieo v. City of New Haven*, 824 N.E.2d 1272, 1275 (Ind. Ct. App. 2005) (quoting *Mangold ex rel. Mangold v. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001)), *trans. denied*. "Because the ITCA is in derogation of the common law, we construe it narrowly against the grant of immunity." *Id.* (quoting *Mangold*, 756 N.E.2d at 975). The party seeking

immunity bears the burden of proving that its conduct falls within the provisions of the ITCA. *Id.* (quoting *Mangold*, 756 N.E.2d at 975).

In his Complaint, Lee generically alleged that the City was negligent based on its failure to adequately warn drivers and pedestrians about the dangers of the Marr Road crosswalk. In response, the City argued that it cannot be held liable under its discretionary function immunity because it was in the process of planning improvements (*i.e.*, flashing lights) to the crosswalk at the time of the accident; it cannot be held liable for failing to implement a lower speed limit or to assign crossing guards at the Marr Road crosswalk under its adoption/enforcement immunity; and it is immune from any liability resulting from the design of Marr Road and the crosswalk based on the fact that there had been no substantial changes in the twenty years preceding the accident. We will address each claim of immunity in turn.

A. *Indiana Code Section 34-13-3-3(7): Discretionary Function Immunity*

First, we consider whether the City is entitled to discretionary function immunity. "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he performance of a discretionary function." I.C. § 34-13-3-3(7). This type of immunity shields certain policy decisions "which cannot be assessed by tort standards." *Joseph*, 651 N.E.2d at 1183. In determining whether discretionary function immunity is applicable, "we apply the planning/operational test." *Id.* We have held that planning functions are discretionary and thus shielded by immunity, whereas operational functions are not. *Id.* "Planning functions

involve the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices." *Id.* (internal quotation marks omitted). On the other hand, operational functions "involve the execution or implementation of already formulated policy." *Id.* (internal quotation marks omitted).

[23] Whether an act is discretionary is a question of law. *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 138 (Ind. 2016) (quoting *Peavler v. Board of Comm'rs of Monroe Cnty.*, 528 N.E.2d 40, 46 (Ind. 1988)). Essentially, we must consider "whether the legislature intended acts such as those challenged to enjoy immunity." *Joseph*, 651 N.E.2d at 1183. In doing so, we "should look to the purposes of immunity to determine whether those purposes would be furthered by extending immunity to the act in question." *Beloat*, 50 N.E.3d at 138. The City must demonstrate that "the challenged act or omission was a policy decision made by consciously balancing risks and benefits." *Id.* (quoting *Peavler*, 528 N.E.2d at 46).

[24] According to the City, Lee cannot establish a viable negligence claim based on a lack of adequate warnings in light of the fact that "there were already two crosswalk warning signs in place in addition to the crosswalk markings itself at the Marr Road Crosswalk, and the driver of the truck was already fully aware of the presence of the crosswalk and saw the crosswalk and its warning signs on the day of the incident." (Appellee's Br. pp. 29-30). Nevertheless, assuming that Lee has a viable negligence claim, the City maintains that "[t]o the extent that [Lee] argue[s] that there should have been a different type of warning sign

at the Marr Road crosswalk, such a claim is barred by discretionary function immunity" because the City "was in the process of planning improvements to the Marr Road crosswalk." (Appellee's Br. pp. 29-30). *See City of Terre Haute v. Pairsh*, 883 N.E.2d 1203, 1208 (Ind. Ct. App. 2008) ("Immunity assumes negligence but denies liability."), *trans. denied*. In turn, Lee simply argues that the City is not entitled to summary judgment based on discretionary function immunity because "[d]ifficult policy decisions were not being resolved by the City with respect to crosswalks and signage. There appears to be nothing more than ad hoc decisions being made." (Appellants' Br. p. 23).

[25] The designated evidence establishes that in 2009, the City "identified the need for an engineering solution for pedestrian crossings that fell between a signalized intersection and a standard marked crosswalk" at multiple crosswalks around Columbus. (Appellants' App. Vol. II, p. 72). By May of 2011, the Indiana Manual on Uniform Traffic Control Devices had approved the use of rectangular rapid flashing beacons (RRFBs) at pedestrian crossings.[4] Thus, to test the efficacy of RRFBs, the City installed one at an "important school crossing that had been having major compliance issues with regards to motorists yielding to pedestrians in the crosswalk." (Appellants' App. Vol. II, p. 72). Thereafter, the City recorded a 95% compliance rate at the crosswalk with the RRFB. In addition, the City found the "solution to be particularly

---

[4] "Each traffic control signal on a street or highway within Indiana must conform with the standards, specifications, and warrants set forth in the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways." I.C. § 9-21-3-1.

effective because the [RRFB] must be actively activated by a pedestrian, thus when it is not in use it does not degrade road capacity." (Appellants' App. Vol. II, p. 72). Accordingly, in May of 2011—almost two years prior to the accident that led to this appeal, the City applied for federal Highway Safety Improvement Program (HSIP) funding to install RRFBs at six other pedestrian crossings in Columbus, including the Marr Road crosswalk.

[26] The cost of installing an RRFB at the Marr Road crosswalk was estimated at $75,000 (with the total cost for all six crosswalks estimated at $487,500). A project that is eligible for HSIP funding receives 90% of the project costs from the federal grant, and the City is responsible for paying the remaining 10%. In addition, transportation projects that involve federal funding must be first approved by the Indiana Department of Transportation (INDOT), and upon the federal agency's approval of an HSIP project, the money flows through INDOT. On October 30, 2012, the Columbus Board of Works and Safety discussed the project, noting that the City's share of the costs would be paid for through the City's Thoroughfare Fund. During that meeting, the Board voted to approve a contract for INDOT to serve as the project coordinator for the improvement of the six pedestrian crosswalks. Then, on December 4, 2012, the Board of Public Works and Safety approved a contract between the City and a consulting firm, under which the consulting firm would develop the construction documents necessary for the project. On January 5, 2013, a contract between the City and INDOT was fully executed for the completion of the RRFB project with HSIP funds. Pursuant to the contract, INDOT was

responsible for letting the project and reviewing bids. Thereafter, INDOT would contract with an appropriate contractor for the construction of the project and would establish the work schedule. Once INDOT received the City's payment for 10% of the project costs, the contractor would be permitted to proceed with construction. The City was responsible for "manag[ing] the project and keep[ing] it moving." (Appellants' App. Vol. II, p. 67). Upon completion of the project, INDOT would "hand it back to the City and say it's yours to maintain." (Appellants' App. Vol. II, p. 65).

[27] On March 11, 2013—the date of Lee's accident, the Columbus Area Metropolitan Planning Organization met and inquired about accelerating the RRFB installation process in light of the fact that a student had been struck by a vehicle. The City's engineer explained that a field check was scheduled for that week, but the delays were the result of having to go through the federal and state aid processes to fund the project. On August 20, 2013, the Board of Public Works approved a request to amend the contract with the consulting firm. Under the amended terms, the consulting firm would also complete necessary studies for environmental documentation and design the curb bump outs as part of the RRFB installation. Finally, at some point in 2015, INDOT opened the project for bidding. Initially, the bids were too high, so INDOT tabled the project for a few months before re-letting it. The second time, INDOT accepted a bid and awarded the contract. However, as of December of 2015, construction had not yet begun.

[28] The City directs our attention to *Lee v. State*, 682 N.E.2d 576, 577 (Ind. Ct. App. 1997), *trans. denied*, in which a mother sued INDOT for negligence after her seventeen-year-old daughter died in a car accident due to the driver's failure "to successfully negotiate a series of curves." The plaintiff contended that INDOT had improperly designed, constructed, and maintained the road and had failed to warn motorists of the unreasonably dangerous nature of the s-shaped curves or eliminate said dangerousness. *Id.* We held that INDOT was entitled to discretionary function immunity because it was in the planning stages of making improvements to the road curves at the time of the accident. *Id.* at 579. The plaintiff attempted to argue that INDOT was not entitled to discretionary function immunity because it had moved beyond the planning phase and into the operational phase as the design and engineering aspects of the project were completed at the time of her daughter's accident. *Id.* We disagreed, noting that "INDOT was required to purchase several parcels of land adjacent to [the road] in order to straighten the road thereby eliminating the [curves]." *Id.* Thus, "[t]he operational phase of the project did not begin until after the contract was let for bidding on October 16, 1992. Decedent's accident occurred in July of 1992, and hence the project was still in the planning phase." *Id.* We found that INDOT's decision to correct the dangerous curves "was the type of discretionary decision intended to be shielded from liability." *Id.*

[29] Lee, however, argues that there is nothing in the designated evidence "which show[s] consideration or weighing of policy issues" as required for discretionary function immunity to apply. (Appellants' Reply Br. p. 17). In support of this,

Lee cites *Beloat*, 50 N.E.3d at 137, where the plaintiff sued the City of Beech Grove after she stepped into a hole on a city street and broke her leg. Beech Grove claimed that it was immune from liability pursuant to the ITCA's discretionary function immunity because it was in the planning stages of performing a complete reconstruction of the entire street, as opposed to piecemeal repairs. *Id.* at 140. As evidence, Beech Grove designated an affidavit from its mayor, along with minutes from City Council and Board of Works and Safety meetings. *Id.* Our supreme court determined that the mayor's affidavit was insufficient to demonstrate that an official policy decision had been made as to why certain repairs should be made over others because the mayor's "comments and actions alone are not actions of the [governing] board itself" and there is no indication that the mayor had been delegated individual authority to make an independent policy decision about road repairs. *Id.* at 140-41. Furthermore, the supreme court noted that the meeting minutes of the governing boards only discussed the financial aspects of the reconstruction project. *Id.* at 141. "The minutes presented within the record [did] not reflect any discussion about how the area encompassed within the [p]roject was decided upon, why specific repairs were selected over others, what would be done about road damage in the meantime, why total reconstruction was necessary, or the costs of total reconstruction compared to conducting other individual repairs." *Id.* at 142. Rather, the minutes designated as evidence "reflect[ed] the steps taken to fund a project that had already been discussed, planned, and approved." *Id.* Thus, Beech Grove was not entitled to summary judgment based on discretionary function immunity. *Id.* at 143. Ultimately,

our supreme court determined that "a governmental entity must demonstrate that 'conscious balancing' took place which can be shown by evidence that 'the governmental entity considered improvements of the general type alleged in [the plaintiff's] complaint.'" *Id.* (alteration in original). In addition, Lee relies on *Birge v. Town of Linden*, 57 N.E.3d 839, 845 (Ind. Ct. App. 2016), which emphasized that an application for funding of a project, by itself, does not "demonstrate a conscious weighing of options" to grant discretionary function immunity as a matter of law.

[30] We find that the present case is more akin to *Lee* than *Beloat* because the designated evidence demonstrates the City's involvement in various phases of analysis, planning, approval, and contracting in order to complete the installation of RRFBs at the Marr Road crosswalk. *See Beloat*, 50 N.E.3d at 139 (distinguishing *Lee v. State* on the basis that "[t]he evidence designated by INDOT clearly demonstrated the multiple phases of investigation, planning, modification, and approval necessary to complete the reconstruction of [the road]"). Unlike in *Beloat*, here, the record is replete with details regarding the policy considerations undertaken by the City in planning for the crosswalk improvements. Specifically, in its application for HSIP funding, the City explained that, after testing the efficacy of the RRFBs at a sample crosswalk and noting a 95% compliance rate, it selected the Marr Road crosswalk as one of six other pedestrian crossings throughout Columbus that would benefit from the use of RRFBs. The City noted that it had received "very positive" feedback "from parents, non-school related pedestrians, school crossing guards, and

motorists" with respect to the use of RRFBs. (Appellants' App. Vol. III, p. 46). The City also considered that the installation of RRFBs would be beneficial to pedestrians without unnecessarily hindering traffic because the RRFBs "must be actively activated by a pedestrian" and do not flash unless in use. (Appellants' App. Vol. III, p. 46). The Marr Road crosswalk was chosen for improvement because

> Marr Road is a minor arterial that runs adjacent to East High School. Traffic volumes are 7,281 [average annual daily traffic]. Each school day, students from [Columbus] East High School must cross Marr Road in order to reach the sports facilities located on the other side of the road. The need for improved pedestrian crossing at this location was identified during the High School campus master planning process which was conducted cooperatively between the School Corporation, the City and other stakeholders as well as during the Bicycle and Pedestrian Planning process.

(Appellants' App. Vol. III, p. 47). In addition to studying the traffic patterns at the crosswalk, the City calculated that 1,286 pedestrians utilize the Marr Road crosswalk each day, not including additional evening pedestrian traffic for sports and auditorium events. The City also considered that, despite the posted speed limit of thirty miles per hour (with a school zone speed limit of twenty miles per hour), the average observed speed in the northbound lane of Marr Road was forty-two miles per hour and was thirty-eight miles per hour in the southbound lane.

[31] The record also establishes that, in early 2011, the City sought approval for the project from INDOT and applied for HSIP funding. Then, in December of

2012, the City entered into a contract with a consulting firm to handle the development of necessary documents for the project, and this contract was subsequently modified in August of 2013 to include additional work for environmental studies and curb bump outs. In January of 2013, the City contracted with INDOT to manage the project. As a result, the bidding process, selection of a contractor, and schedule of work were all under INDOT's control. At the time of Lee's accident in March of 2013, the City was preparing for a field check, and INDOT had not let out the project for bidding yet. Thus, despite the prolonged process, we find that the City was still in the planning stages at the time of the accident. *See Lee*, 682 N.E.2d at 579.

[32] Furthermore, the evidence reveals that Lee was the second student within a two-year period to be struck by a vehicle at the Marr Road crosswalk. Thus, it is clear that the City recognized that, despite being in compliance with the Indiana Manual on Uniform Traffic Control Devices with respect to the warning signs and high visibility markings already in place, it could do more to improve the safety of pedestrians in that area. The fact that it was a slow process was not the fault of the City, but rather was due to the nature of coordinating a federally-funded project with a state agency. We find that the City's effort to remedy the dangers associated with the Marr Road crosswalk falls within the realm of activity that the legislature intended to protect with discretionary function immunity. *See id.* Thus, to the extent that Lee maintains that the City was negligent in failing to include additional warnings at the Marr Road crosswalk, we find that the City has discretionary function immunity.

B. *Indiana Code Section 34-13-3-3(8): Immunity for Failure to Adopt or Enforce Laws*

[33] Next, we consider whether the City is entitled to immunity based on a failure to adopt or enforce a law, rule, or regulation. "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from "[t]he adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations)." I.C. § 34-13-3-3(8). It is well established that "the legislature intended that a government entity be immune only for failing to adopt or enforce a law that falls within the scope of its purpose or operational power." *Gary Cmty. Sch. Corp. v. Boyd*, 890 N.E.2d 794, 800 (Ind. Ct. App. 2008) (quoting *King v. Ne. Security, Inc.*, 790 N.E.2d 474, 483 (Ind. 2003)), *trans. denied*. In seeking summary judgment, the City claimed that it is immune from liability to the extent that Lee contends that the City should have enacted a lower speed limit at the crosswalk, that the City should have installed a stop sign at the crosswalk, or that the City should have utilized crossing guards at the crosswalk.

[34] As a "local authorit[y]" under Indiana Code section 9-13-2-94(b), the City "may adopt by ordinance additional traffic regulations with respect to highways under the authority's jurisdiction" so long as it does not "conflict with or duplicate a statute." I.C. § 9-21-1-2. In part, "with respect to private roads and highways under the authority's jurisdiction," the City may "[r]egulate traffic by means of police officers or traffic control signals"; "[d]esignate an intersection as a stop intersection and require all vehicles to stop at one (1) or more

entrances to the intersection"; or "[a]lter the prima facie speed limits authorized under [Indiana Code chapter] 9-21-5." I.C. § 9-21-1-3(a)(2),(7),(11).

[35] Specifically with respect to altering *prima facie* speed limits, we note that Indiana Code section 9-21-5-2(a)(1) establishes a "maximum lawful speed" limit of "[t]hirty (30) miles per hour in an urban district." However,

> [a] city, town, or county may establish speed limits on a street or highway upon which a school is located if the street or highway is under the jurisdiction of the city, town, or county, respectively. However, a speed limit established under this subsection is valid only if the following conditions exist:
>
> (1) The limit is not less than twenty (20) miles per hour.
>
> (2) The limit is imposed only in the immediate vicinity of the school.
>
> (3) Children are present.
>
> (4) The speed zone is properly signed. There must be:
>
> > (A) a sign located where the reduced speed zone begins or as near as practical to the point where the reduced speed zone begins indicating the reduced speed limit and a sign located at the end of the reduced speed zone indicating the end of the reduced speed zone; and
> >
> > (B) if the school operates on a twelve (12) month schedule, a sign indicating that the school is an all year school.

I.C. § 9-21-5-6(f).

[36]     The City thus had authority to adopt and enforce regulations regarding the use of traffic control signals and police officers to regulate traffic. The City also had power to designate intersections as stop intersections. Finally, the City could alter the *prima facie* speed limit of thirty miles per hour for an urban area by decreasing it to twenty miles per hour in the vicinity of a school. The wording of Indiana Code section 34-13-3-3(8) makes it clear that the City is immune for any failure to adopt or enforce a law, rule or regulation; as such, the City cannot be liable because it did not erect a stop sign at the Marr Road crosswalk or enact a lower speed limit. *See Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 522 n.20 (Ind. Ct. App. 2005) (finding immunity based on a county's failure to pass an ordinance for a reduced speed limit), *trans. denied*; *Bd. of Comm'rs of Cnty. of Harrison v. Lowe*, 753 N.E.2d 708, 714 (Ind. Ct. App. 2001) (noting that failing to erect a traffic control device is, in part, "a legislative act" that is entitled to immunity under (what is now) Indiana Code section 34-13-3-3(8)), *trans. denied*.

[37]     Concerning whether the City should have utilized crossing guards at the Marr Road crosswalk, the City insists that it is "immune under the 'enforcement' provision" of Indiana Code section 34-13-3-3(8). (Appellee's Br. p. 27). The City argues that this case is similar to *State v. Flanigan*, 489 N.E.2d 1216 (Ind. Ct. App. 1986), *trans. denied*, and we agree. In *Flanigan*, the plaintiffs parked their car at the side of a highway and then proceeded to walk along the highway in order to attend a flea market where there had been inadequate parking. *Id.* at 1217. While walking, the plaintiffs were struck by a vehicle, and they sued the

State of Indiana for negligence, asserting that the Indiana State Police "failed to provide any traffic control to assure that pedestrians could travel on the highways safely." *Id*. Our court held that "[a]ny decision by the [S]tate [P]olice whether or not to patrol the area of [the] flea market or to provide traffic control would be a decision on whether or not to enforce the law. Such an act clearly is within and protected by the immunity granted by the [ITCA]." *Id.* at 1220.

[38] Lee contends that the crossing guards cannot enforce laws because, as civilian employees, they do not possess any police powers. Nevertheless, the designated evidence establishes that "the crossing guards are part of the police function, and the police decide where those will go." (Appellants' App. Vol. II, p. 66). The Columbus Police Department (which is a department of—rather than a separate entity from—the City) employs twenty-one crossing guards on a seasonal, part-time basis. The crossing guards are paid from the police department's budget. Crossing guards who notice a compliance problem (*i.e.*, an excessive number of speeding drivers) at their intersection/crosswalk are instructed to notify the Columbus Police Department's administrative special secretary, who then raises the issue(s) with the appropriate officers for enforcement. In determining where to place crossing guards, the police department communicates with the school system; however, as a matter of policy, the police department only assigns crossing guards to crosswalks and intersections where elementary school students (*i.e.*, up to sixth grade) would be expected to cross. Thus, while the crossing guards themselves do not have any

enforcement authority, they are directly controlled by the Columbus Police Department and serve as a mechanism of traffic control for safe pedestrian crossing. Accordingly, we conclude that the decision not to place a crossing guard at the Marr Road crosswalk is subject to immunity under Indiana Code section 34-13-3-3(8).[5]

## IV. *Negligence*

[39] Because a finding of immunity precludes liability, we generally do not reach the elements of negligence. *See Pairsh*, 883 N.E.2d at 1208. Here, although we have concluded that summary judgment was not appropriate on the basis of Lee's contributory negligence, we have determined that the City is entitled to immunity based on any perceived failure to include additional warnings, such as RRFBs, at the Marr Road crosswalk or based on its failure to erect a stop sign at the crosswalk, enact a reduced speed limit along Marr Road, or station crossing guards at the crosswalk. Although there is immunity for a City's decision to enact an ordinance regarding the speed limit in a certain area, we must nevertheless address the fact that there were multiple speed limit signs

---

[5] The City also claimed that it was immune under Indiana Code section 34-13-3-3(18), which provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [the] [d]esign of a highway . . . , toll road project . . . , tollway . . . , or project . . . if the claimed loss occurs at least twenty (20) years after the public highway, toll road project, tollway, or project was designed or substantially redesigned." There is no dispute that the design of Marr Road and the crosswalk had not been altered in the twenty years preceding the accident. Although Lee did not challenge that the design of the road or crosswalk resulted in the accident, he nevertheless argued that the City could not claim immunity under this provision because the placement of the speed limit signs, which were changed in 2011, proximately caused the accident. Because we address the matter of the speed limit signs elsewhere in this opinion, we need not address the City's claim of immunity under Indiana Code section 34-13-3-3(18). Likewise, we need not address the parties' arguments as to whether the City was entitled to common law immunity regarding the placement of crossing guards at the Marr Road crosswalk.

posted, creating a discrepancy as to whether, at the time of the accident, the *enacted* speed limit was twenty miles per hour or thirty miles per hour approaching the Marr Road crosswalk. The City offers no basis under the ITCA that would grant it immunity if it posted an incorrect speed limit sign. *See, e.g.*, *Joseph*, 651 N.E.2d at 1185 (noting that posting an incorrect speed limit sign "cannot be discretionary" and is, therefore, not shielded from liability under Indiana Code section 34-13-3-3(7) because "[p]osting speed limits involves nothing more than implementing established policy").

[40] Lee maintains that the City is negligent because an improper speed limit sign was the cause of the accident. In order to sustain an action for negligence, Lee must establish: "(1) a duty owed by [the City] to conform its conduct to a standard of care arising from its relationship with [Lee]; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty." *St. John Town Bd. v. Lambert*, 725 N.E.2d 507, 514 (Ind. Ct. App. 2000). Whether the City has a duty is a question of law subject to the court's determination, and our courts have "long recognized a general duty on the part of the state, counties, and municipalities to exercise reasonable care in the design, construction, maintenance, and repair of the road and highways within their control." *Id.* at 514-15. Moreover, we have previously identified a duty for such entities to "regulate the use of the public ways," such as by posting street signs, erecting lights, or installing warning devices for the safety of the general public. *Id.* at 516. If a duty is breached, we must determine whether the breach is the proximate cause of another's injury by considering "whether the injury was a

natural and probable consequence of the negligent act which, in the light of the attending circumstances, could have been reasonably foreseen or anticipated." *Id.* at 520. In other words, for a breach to proximately cause an injury, it "must have set in motion a chain of circumstances which, in natural and continuous sequence, le[d] to the resulting injury." *Id.*

[41] Drivers approaching the Marr Road crosswalk in the northbound lane observed two speed limit signs. The first sign drivers passed was 1,264 feet from the crosswalk and indicated a school zone speed limit of twenty miles per hour. This sign did not indicate that the school zone speed limit was only to be in effect at specific times. Thereafter, 427 feet away from the crosswalk, a second sign indicated that the speed limit was thirty miles per hour. Conversely, for drivers approaching the crosswalk from the southbound lane, the school zone speed limit sign of twenty miles per hour and the regular speed limit sign of thirty miles per hour were placed directly next to each other, approximately one-half mile away from the crosswalk.

[42] The City contends that it did not breach its duty because Marr Road was in a reasonably safe condition at the time of the accident. The City designated the affidavit of William Taylor (Taylor), a professor emeritus in the department of civil engineering at Michigan State University, with a Ph.D in engineering. Taylor concluded that the installation of the speed limit signs and crosswalk warning signs "was in accordance with the [Indiana Manual on Uniform Traffic Control Devices] and provided adequate and sufficient warning of the approach of the crosswalk, of the potential presence of students crossing Marr

Road, and of the necessity to drive at modest speed and to be attentive on school days." (Appellants' App. Vol. II, p. 103). Thus, notwithstanding any confusion with respect to the placement of the speed limit signs, the City argues that, even assuming the higher thirty-miles-per-hour speed limit was in effect for the school zone, there is no evidence that the road was rendered unsafe.

[43] In response, Lee designated the affidavit of a civil engineer, Richard Hicks (Hicks). Hicks noted that the Indiana Manual on Uniform Traffic Control Devices "requires that [s]peed [l]imit signs shall be located at the points of change from one speed limit to another, and that at the downstream end of the section to which a speed limit applies, a [s]peed [l]imit sign showing the next speed limit shall be installed." (Appellants' App. Vol. III, p. 142). *See also* I.C. § 9-21-5-6(f)(4)(A) (requiring a school zone reduced speed limit sign to be "located where the reduced speed zone begins or as near as practical to the point where the reduced speed zone begins indicating the reduced speed limit and a sign located at the end of the reduced speed zone indicating the end of the reduced speed zone"). Thus, Hicks concluded that

> [t]he 20 miles per hour School Speed Limit zone for northbound traffic on Marr Road was not properly signed on the day of . . . Lee's accident. The Speed Limit 30 sign, located 837 feet north of the School Speed Limit 20 sign and 427 feet south of the crosswalk, signaled that the speed limit of 20 was no longer in effect and that the legal speed limit from that point forward was 30 miles per hour. The Speed Limit 30 sign told northbound drivers like Mr. McLeod that it was acceptable to drive at speeds more than 20 miles per hour and up to 30 miles per hour from that point forward. The Speed Limit 30 sign should not have

been there. It should have been removed when the School Speed Limit Assembly was installed.

(Appellants' App. Vol. III, p. 143).

[44] The evidence establishes that McLeod did not see Lee until after the impact; thus, this is not a situation where the speed limit affected McLeod's ability to apply his brakes fast enough. However, the speed limit may present a timing issue. McLeod believed that the set speed limit was thirty miles per hour, and he claimed to be travelling between twenty-five and thirty miles per hour at the time of the accident. Additionally, there is evidence indicating that the speed limit was twenty miles per hour through the school zone. In his deposition, McLeod conceded that "had I been traveling [twenty] miles an hour instead of [thirty], if that is, in fact, the case, I may not have been to the crosswalk at the time that [Lee] was crossing." (Appellants' App. Vol. III, p. 135). Similarly, Hicks determined that "[a] time and distance analysis shows that if . . . McLeod had been driving [twenty] miles per hour instead of 'someplace between [twenty-five] and [thirty]' miles per hour from the location of the Speed Limit 30 sign 427 feet south of the crosswalk, . . . Lee walking at a normal rate would have been beyond . . . McLeod's path of travel by the time . . . McLeod reached the crosswalk." (Appellants' App. Vol. III, p. 144).

[45] We find that whether the City's dual placement of speed limit signs approaching the Marr Road crosswalk constituted a breach of its duty to exercise reasonable care in the maintenance and regulation of public roadways is a question of fact that should be determined by a jury. *See Mangold*, 756

N.E.2d at 975 (noting that, unless "the facts are undisputed and lead to but a single inference or conclusion," "a breach of duty, which requires a reasonable relationship between the duty imposed and the act alleged to have constituted the breach, is usually a matter left to the trier of fact"). Furthermore, if it is determined that such conduct constitutes a breach, we find that a question of fact exists as to whether the City's placement of varying speed limit signs proximately caused the accident resulting in Lee's injuries. *See Correll v. Ind. Dep't of Transp.*, 783 N.E.2d 706, 707 (Ind. Ct. App. 2002) ("The injurious act must be both the proximate cause and the cause in fact of an injury. Generally, causation, and proximate cause in particular, is a question of fact for the jury's determination.") (internal quotation marks and citation omitted), *trans. denied*. Accordingly, we reverse the trial court's entry of summary judgment and remand for further proceedings.

## CONCLUSION

[46] Based on the foregoing, we conclude that the trial court erred in granting summary judgment on the basis of contributory negligence. We further conclude that the City is entitled to statutory immunity with respect to its plans for improvements to the crosswalk and its decision to enact a certain speed limit and to not erect a stop sign or station crossing guards at the crosswalk. Nevertheless, we conclude that summary judgment is improper because there are genuine issues of material fact as to whether the City breached its duty of reasonable care by installing conflicting speed limit signs and whether such a

breach, if any, proximately caused the accident. Therefore, we remand this case for further proceedings.

[47] Reversed and remanded.

[48] Altice, J. concurs

[49] Crone, J. dissents with separate opinion

| | |
|---|---|
| Jalen Lee, A Minor Child, by and through his Next Friend, Crystal Estes, and Crystal Estes, Individually, | Court of Appeals Case No. 03A01-1608-CT-1900 |
| *Appellants-Plaintiffs,* | |
| v. | |
| Bartholomew Consolidated School Corporation, City of Columbus, Columbus City Planning Commission, and Columbus Police Department, | |
| *Appellees-Defendants* | |

**Crone, Judge, dissenting.**

[50] I respectfully dissent. If a plaintiff who files a tort claim against a governmental entity, such as the City, "is negligent to even a small degree and that negligence proximately contributes to his claimed damages, contributory negligence will operate as a complete bar to his action." *Hill*, 54 N.E.3d at 406. Although generally a question of fact, contributory negligence may be "a question of law appropriate for summary judgment if the facts are undisputed and only a single

inference can be drawn therefrom." *Id*. at 406-07. The relevant facts here are undisputed, and I believe that the only inference that can be drawn from them is that Lee was contributorily negligent and therefore the City is entitled to summary judgment as a matter of law.

[51] "[C]ontributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise." *Id*. at 406. Under Indiana law, children between the ages of seven and fourteen are presumed to be incapable of contributory negligence. *Timberman*, 918 N.E.2d at 297. But "the existence of the presumption will not preclude summary judgment for the alleged tortfeasor on grounds of contributory negligence in the appropriate case." *Id*. at n.4. Indeed, the presumption is rebuttable with evidence showing the child's capacity, i.e., by offering proof that the child, "based on his age, mental capacity, intelligence and experience, was accountable for his actions." *Id*. at 298.

[52] In my view, the City rebutted the presumption in this case. Lee was a thirteen-year-old eighth-grader with no cognitive infirmities. He had used the same crosswalk twice each school day and in every kind of weather for the past two years. "He knew to look both ways before crossing, and it was his habit to wait for a vehicle to come to a full stop before crossing instead of assuming that a slowing vehicle would fully stop." Slip op. at 4. On the day of the accident, Lee looked both ways when he approached the crosswalk from the east and saw McLeod's truck approaching in the northbound lane (i.e., the lane that was

closer to him), but he walked into the crosswalk anyway. Although Lee believed that he had sufficient time to cross the road without causing the truck to have to adjust its speed or stop, he apparently failed to watch the truck when he entered the crosswalk or he would have noticed it did not slow down. McLeod testified that he did not see Lee and did not brake until after he heard the impact.

[53] The undisputed evidence shows that Lee should be held accountable for his actions. He knew and appreciated the dangers of using the crosswalk and had exercised reasonable care in the past by waiting for vehicles to come to a full stop before crossing the road. He failed to exercise reasonable care on the day he was struck and therefore was contributorily negligent as a matter of law. Consequently, I would affirm the trial court's entry of summary judgment for the City on this ground.

I would also affirm on the basis that any negligence on the City's part with respect to the speed limit signs did not proximately cause Lee's injuries as a matter of law. The majority acknowledges that "McLeod did not see Lee until after the impact; thus, this is not a situation where the speed limit affected McLeod's ability to apply his brakes fast enough." *Id*. at 32. McLeod did not know precisely how fast he was going when he hit Lee, and the notion that he would have driven more slowly and not hit Lee if the posted speed limit had been twenty miles per hour is mere speculation, which cannot create a question of fact on summary judgment. *Beatty v. LaFountaine*, 896 N.E.2d 16, 20 (Ind. Ct. App. 2008), *trans. denied* (2009).